# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2010

Lyle W. Cayce
Clerk

No. 09-60549

AZMI HAKIM, also known as Azzi Hakim, also known as Azmi R. Hakim,

Petitioner

v.

ERIC H. HOLDER, JR., U. S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of
the Board of Immigration Appeals

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Azmi Hakim seeks review of a Board of Immigration Appeals ("BIA") order finding that his money laundering conviction was for more than $10,000, and constituted a particularly serious crime under 8 U.S.C. § 1231(b)(3)(B)(ii). He further contends that the BIA applied an incorrect legal standard to find that he was not eligible for relief under the Convention Against Torture ("CAT"). We affirm the BIA holding that Hakim laundered more than $10,000, and that this constituted a particularly serious crime. We find, however, that the BIA applied an incorrect legal standard in its CAT consideration, and therefore remand this case to be decided under an "actual knowledge" or "willful blindness" standard.

No. 09-60549

I.

Azmi Hakim is a native and citizen of Israel who entered the United States as an immigrant in 1988. In 2000, Hakim and several other men were indicted for drug trafficking, tax fraud, and money laundering. In 2003, Hakim was convicted of tax fraud and money laundering and sentenced to 37 months of imprisonment. Only the money laundering is relevant to the instant petition for review.

In July 2006, the Department of Homeland Security ("DHS") issued a Notice to Appear charging that Hakim was removable for being convicted of the aggravated felony of money laundering involving more than $10,000. Hakim admitted the fact of conviction but contested whether the amount of actually-laundered money exceeded $10,000, as was required to meet the definition of aggravated felony found at 8 U.S.C. § 1101(a)(43)(D). At a hearing in May 2007, the immigration judge ("IJ") found clear and convincing evidence that Hakim laundered more than $10,000, and that he was therefore removable for having committed an aggravated felony. Hakim then sought withholding of removal and protection under the CAT.

At a hearing in October 2007, Hakim, a Greek Orthodox Christian, alleged that Muslims persecuted him and members of his family in Israel. The IJ concluded that withholding was not available to Hakim under § 1231(b)(3)(B)(ii) because his money laundering offense was a "particularly serious crime." The IJ rejected the CAT claim on grounds that Hakim did not show that the government of Israel had acquiesced to any torture of Hakim by Muslims in Israel. It ordered that Hakim be removed to Israel.

Hakim appealed to the BIA. The BIA affirmed the IJ's removal decision, holding that Hakim was removable for having committed an aggravated felony because his money-laundering crime involved more than $10,000. The BIA also

2

No. 09-60549

determined that the money laundering was a particularly serious crime that presented a danger to the community because it was related to drug trafficking. The BIA affirmed the denial of CAT relief, finding no showing of either the likelihood of torture by Muslims or acquiescence in such torture by the government of Israel.

Hakim timely appealed the BIA decision. DHS filed an unopposed motion for remand so that it could further consider the amount of money laundered by Hakim, which this court granted. The BIA in turn remanded the case to the IJ. On remand to the IJ, the DHS submitted evidence to show that Hakim's money-laundering crime involved more than $10,000. The evidence presented included Hakim's plea agreement, Hakim's presentence report addendum, and a letter from the U.S. Probation Office stating that the "case involves approximately $113,000." Hakim argued that only the amount of illegally-obtained money that was actually laundered, exclusive of any lawfully gained and commingled funds, could be counted toward the $10,000. He also argued that only funds relevant to the charged count, and not from any additional uncharged or relevant conduct under the Sentencing Guidelines, could be included in the calculation.

The IJ concluded that the DHS's additional evidence confirmed that Hakim laundered more than $10,000. Hakim appealed to the BIA, which affirmed the IJ decision. Hakim filed a timely petition for review by this court.

II.

This court reviews the BIA's order but also considers the IJ's reasoning to the extent it has an impact on the BIA's determination. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir. 1997). Generally, this court reviews rulings of law de novo and findings of fact for substantial evidence. *Zhu v. Gonzales*, 493 F.3d 588, 594 (5th Cir. 2007). However, this court accords deference to the BIA's

interpretation of immigration statutes and will affirm the BIA's interpretation unless there is a "dispositive error of law." *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994).

## III.

In support of his petition for review, Hakim raises three issues: (1) he renews his challenge to the finding that he committed an aggravated felony by laundering more than $10,000, (2) he contends that the BIA failed to use the correct legal standard in deciding that he had committed a particularly serious crime; and (3) he contends that the denial of CAT relief was based on an incorrect legal standard and unsupported by substantial evidence. We consider each of these issues in turn.

## A.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is defined to include a money-laundering crime under 18 U.S.C. § 1956 "if the amount of the funds exceeded $10,000." 8 U.S.C. § 1101(a)(43)(D). Where an alien is charged with being removable for committing an aggravated felony, the Government has the burden of establishing removability by clear and convincing evidence. *Arguelles-Olivares v. Mukasey*, 526 F.3d 171, 178 (5th Cir. 2008). A determination of removability is valid only if "it is based upon reasonable, substantial, and probative evidence." *Id.* (internal quotation marks and citation omitted). These standards apply on appellate review of whether the BIA erred in determining the amount of loss needed to establish an aggravated felony. *Id.*

Hakim does not dispute that he laundered money, but he does argue that the DHS was required to prove specifically that at least $10,000 of the money involved in his money-laundering crime was derived from unlawful activity. This circuit has previously held that money involved in a money laundering

crime can and does include commingled, legitimate funds because they facilitate and advance the money laundering. *See United States v. Tencer*, 107 F.3d 1120, 1134-35 & n.6 (5th Cir. 1997); *see also United States v. Davis*, 226 F.3d 346, 356 (5th Cir. 2000) (citing *Tencer* as holding that "section 1956 requires only that any part of transaction involved tainted funds"). Accordingly, the $10,000 requirement of § 1101(a)(43)(D) is satisfied where the money laundering "involved" more than $10,000, even absent proof that all of the money was gained through unlawful activity. *See Tencer*, 107 F.3d at 1135-36 & n.6.

Hakim suggests that in *Chowdhury v. INS*, the Ninth Circuit reached the opposite result. 249 F.3d 970, 973 (9th Cir. 2001). In *Chowdhury*, the defendant was convicted of multiple fraud crimes as well as a money-laundering transaction that "involved one check issued in the amount of $1,310." *Id.* at 971. The court explained that the amount of laundered money was limited to the $1,310 and did not include larger sums lost by the victims. *Id.* at 973. When the court referred "to the amount of money that was laundered" it was merely distinguishing the money involved in the money laundering crime from "the loss to the victim or the total proceeds of the criminal activity." *See id.* The court did not examine or discuss whether all or part of the $1,310 was tainted, and it did not require proof that all or part of it was tainted. *See id.*

Hakim's reliance on *United States v. Allen* is similarly misplaced. 76 F.3d 1348 (5th Cir. 1996). In *Allen*, this court rejected the defendant's request to exclude from the laundered amount certain fees that had not caused an actual loss to the victims. *Id.* at 1369. This court noted that the sentence for money laundering was based on "the value of the funds that the defendant laundered" rather than the amount of loss. *Id.* Like the Ninth Circuit in *Chowdhury*, the *Allen* court was simply distinguishing the money involved in the laundering crime from the loss suffered by the victims. *See id.* The *Allen* court concluded

that all funds diverted to the defendant were countable as laundered money. *Id*.

Thus, neither *Chowdhury* nor *Allen* nor the relevant aggravated-felony and money-laundering statutes require an exact accounting of the source of each dollar charged in connection with a money-laundering crime. There is, therefore, no authority to support Hakim's narrow construction of § 1101(a)(43)(D) as requiring proof that all of the $10,000 be tainted funds. Accordingly, we hold the DHS was required to show only that Hakim's crime involved more than $10,000. The record contains clear, convincing, and properly admitted evidence to establish that Hakim's crime involved at least $50,000 of illegal drug money. We therefore find that Hakim committed an aggravated felony and is therefore deportable.

## B.

Hakim contends that the BIA failed to use the correct legal standard to decide that he had committed a particularly serious crime under § 1231(b)(3)(B)(ii). Hakim's aggravated-felony sentence was less than five years, so it was not automatically deemed to be particularly serious. But, the Attorney General retains discretion to determine whether an aggravated felony resulting in a lesser sentence was a particularly serious crime. § 1231(b)(3)(B). The Attorney General found that Hakim's crime was particularly serious. The BIA agreed, noting the link between Hakim's money laundering and drug activity.

Hakim contends that the BIA applied the legal standard improperly because it did not examine, individually, each of the factors set forth in *Matter of Frentescu*, 18 I&N Dec. 244, 247 (BIA 1982). In support of this proposition, Hakim cites *Afridi v. Gonzales*, 442 F.3d 1212 (9th Cir. 2006). *Afridi* discusses at length whether the BIA must consider each *Frentescu* factor and cites considerable case law holding that the BIA is only required to perform "case specific analysis," not consideration of each individual factor. *Afridi* does not

explicitly hold, nor do we understand it to mean, that the BIA must individually consider each *Frentescu* factor before reaching its decision.  Therefore, because the BIA opinion clearly indicates that the BIA performed a case-specific analysis of Hakim's claim consistent with precedent, we find that it applied the correct legal standard.[1]

## C.

Hakim argues that the BIA failed to use the correct legal standard to find that he was ineligible for protection under the CAT.  He further contends that the BIA's denial of relief was not supported by substantial evidence.  In unpublished opinions, this court has found that it does not have jurisdiction to analyze factual questions of CAT relief, but may consider whether the IJ or BIA applied the correct legal standard.  *Ahmed v. Mukasey*, 300 F. App'x 324, 327-28 (5th Cir. 2008) (holding that absent a constitutional claim or question of law, the court lacks jurisdiction over BIA or IJ decisions on CAT relief); *Marmorato v. Holder*, 376 F. App'x 380, 384-85 (5th Cir. 2010) (taking jurisdiction to decide whether IJ applied the proper legal standard on an issue of CAT relief).  The question is, therefore, whether the BIA applied the correct legal standard to determine whether Hakim was eligible for CAT protection.

---

[1] Although he claims his argument pertains to the legal standard used by the BIA, much of Hakim's argument is in fact based upon the merits of the BIA decision .  Circuits are split on the issue of whether an appellate court has jurisdiction to consider the merits of a BIA determination that a crime was not particularly serious under § 1231(b)(3)(B).  *See Solorzano-Moreno v. Mukasey*, 296 F. App'x 391, 394 n.5 (5th Cir. 2005) (noting that there is a circuit split over whether a finding that an alien has been convicted of a "particularly serious" crime is discretionary, and therefore outside the jurisdiction of appellate courts); Michael McGarry, Note, *A Statute in Particularly Serious Need of Reinterpretation: The Particularly Serious Crime Exception to Withholding of Removal*, 51 B.C. L. Rev. 209, 211 n. 22 (2010) (same).  In an unpublished opinion, this court has held that it did not have jurisdiction to consider the merits of the BIA's determination that the crime was particularly serious.  *Razaq v. Gonzales*, 242 F. App'x 181, 182 (5th Cir. 2007).  Because Hakim asks only that we consider the legal standard used by the BIA, we need not address whether we have jurisdiction over the merits-based aspects of his argument.

To obtain protection under the CAT, an alien must demonstrate that, if removed to a country, it is more likely than not he would be tortured by, or with the acquiescence of, government officials acting under the color of law. 8 C.F.R. § 208.16(c)(2). We have held that the requisite "acquiescence" is satisfied by a government's willful blindness of torturous activity. *Ontunez-Tursios v. Ashcroft*, 303 F.3d 341, 354 (5th Cir. 2002).

To make a CAT determination for Hakim, the BIA relied on the standard articulated in *Matter of S-V-*,[2] which states that "[t]o demonstrate 'acquiescence' by [g]overnment officials, the respondent must do more than show that the officials are aware of the activity constituting torture but are powerless to stop it. He must demonstrate that [the] officials are willfully accepting of the [ ] torturous activities." 22 I. & N. Dec. 1306, 1312 (BIA 2000).

The Sixth and Ninth Circuits have overruled *Matter of S-V-*, noting that it failed to properly include "willful blindness" in the definition of "acquiescence." *Zheng v. Ashcroft,* 332 F.3d 1186, 1194-96 (9th Cir. 2003) (noting that the "BIA's interpretation and application of acquiescence impermissibly requires more than awareness and instead requires that a government be willfully accepting of a third party's tortu[r]ous activities"); *Ochoa v. Gonzales*, 406 F.3d 1166, 1172 (9th Cir. 2005) (acknowledging that in *Zheng* the Ninth Circuit overruled *Matter of S-V*); *see Amir v. Gonzales,* 467 F.3d 921, 927 (6th Cir. 2006) (overruling *Matter of S-V-*).

The Fifth Circuit has mentioned *Matter of S-V-* twice. In *Ontunez-Tursios v. Ashcroft*, we cited *Matter of S-V-* for the proposition that "'[w]illful blindness suffices to prove 'acquiescence.'" 303 F.3d at 254 (citing *Matter of S-V-*, 2000 WL 562836). Although *Ontunez* did not provide a pin citation for this proposition,

---

[2] Courts have used the case names *"Matter of S-V-"* and *"In re S-V-"* interchangeably to refer to the same case, which is: 22 I. & N. Dec. 1306, 1312 (BIA 2000).

the only place "willful blindness" appears in the majority opinion of *Matter of S-V-* is in the following quotation:

> The Senate Committee on Foreign Relations clarified the point by stating that "(t)he purpose of this condition is to make it clear that both actual knowledge and 'willful blindness' fall within the definition of the term 'acquiescence.'" Senate Report, supra, at 9. Consequently, the definition of "torture" " includes only acts that occur in the context of governmental authority." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8483 (1999) (citing S. Treaty Doc. No. 100-20, at 19).

*Matter of S-V-,* 22 I& N. Dec. at *1312. Thus, the citation of *Matter of S-V-* following the discussion of "willful blindness" in *Ontunez-Tursios* could not refer to the actual holding of *Matter of S-V-*, but instead must refer to the portion of the opinion discussing the views of the Senate Committee on Foreign Relations. We did not, therefore, uphold *Matter of S-V-* in *Ontunez-Tursios*.

In the unpublished opinion *Trejo-Robles v. Holder*, we upheld a BIA decision citing *Matter of S-V-* after finding that the decision "did not turn on a lack of government acquiescence to torture, but rather on Trejo-Robles's failure to prove that it was 'more likely than not' he would be tortured." 348 F. App'x 982, 984 (5th Cir. 2009). Thus, in *Trejo-Robles*, this court did not decide whether *Matter of S-V-* was correctly decided, but instead decided the case on other grounds.

The government argues that in *Chen v. Gonzales* we have previously upheld a standard similar to the one employed by the BIA in this case. 470 F.3d 1131 (5th Cir. 2006). In *Chen*, the alien seeking CAT protection argued that the IJ applied the wrong legal standard for "acquiescence" by requiring actual acceptance of torture. *Id*. at 1141. The court found that "Chen's characterization of the IJ's conclusion [was] overstated" because there was no indication that the IJ denied Chen's claim by requiring that she show "actual"

acquiescence to torture. *Id.* In *Chen*, we cited the IJ opinion to show that it was consistent with the "willful blindness" standard articulated by this court and similarly followed in the Sixth and Ninth Circuits:

> I guess another aspect of this would be whether if the money lenders who have not yet been paid came after her might the *government look the other way and therefore be at least complicit* in whatever might happen to [her] at the hand of these loan sharks, and perhaps then whatever would happen to [her] that might be seen as torture if the government *were aware* of any penalties being meted out and took no action to protect the respondent.

*Id*. at 1141-42 (quoting the order of the IJ) (emphasis added in Chen). In contrast with the IJ in *Chen*, the BIA in this case did not employ a willful blindness standard consistent with our precedent and that of other circuits.

Accordingly, we agree with our sister circuits in finding that the standard articulated in *Matter of S-V-* does not include the willful blindness standard required for CAT protection. Requiring that government officials "willfully accept[]" torture is inconsistent with the Senate Committee on Foreign Relations statement that "willful blindness" satisfies the statutory standard.

IV.

We find that the BIA correctly ruled that Hakim laundered more than $10,000; we DENY the petition to review that issue. We also find that the BIA used the correct legal standard to determine that Hakim's conviction constituted a particularly serious crime, and accordingly DENY the petition to review that issue. We find that the BIA applied an incorrect legal standard in assessing Hakim's CAT claim and therefore VACATE the BIA's holding and REMAND the CAT claim to the BIA be decided in accordance with the legal standard set forth in this opinion.

REVIEW DENIED in part; VACATED and REMANDED in part.