# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40599

United States Court of Appeals
Fifth Circuit

**FILED**

April 1, 2014

Lyle W. Cayce
Clerk

MICHAEL GARRETT,

Plaintiff – Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:13-cv-00070

Before WIENER, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM: [*]

Plaintiff-Appellant Michael Garrett filed a complaint pursuant to 28 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") challenging the conditions of his confinement and seeking ADA sanctions and injunctive relief. The magistrate judge dismissed all of Garrett's claims with prejudice for failure to state a claim on which relief may be granted pursuant to 28 U.S.C.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-40599

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  For the reasons below, we REVERSE the district court's dismissal of Garrett's Eighth Amendment claims and AFFIRM its dismissal of his Fourth Amendment, equal protection, and ADA claims.

## FACTUAL BACKGROUND

On March 13, 2013, Michael Garrett, a prisoner incarcerated in the McConnell Unit, Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), filed a complaint pursuant to § 1983 and the ADA against (1) Rick Thaler, then the TDCJ-CID Director, (2) Eileen Kennedy, Region IV Director, (3) Senior Warden Currie, (4) Assistant Warden Monroe, and (5) unnamed defendants identified in the McConnell Unit's employee log book "for 18 and 19 dorm," including officers from other prison units.  Garrett brought the following claims, challenging his conditions of confinement between 2008 and 2013: (1) deprivation of a minimum of six hours of uninterrupted sleep, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment; (2) use of surveillance cameras throughout the "bathroom shower area and dressing (cubicle) area" in violation of his rights to privacy and equal protection; and (3) violation of the ADA's architectural guidelines in the McConnell Unit's showers, restrooms, and cells. Garrett sought the imposition of sanctions under the ADA and injunctive relief, including change of the prison schedule to accommodate six hours of sleep, removal of cameras from the bathrooms, and installation of safety rails in the toilet areas and showers.

With Garrett's consent, a magistrate judge presided over all proceedings in the case.  Following an evidentiary hearing conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams,* 490 U.S. 319, 324 (1989), the magistrate judge issued an opinion and order of dismissal for failure to state a claim on which relief can be granted. The magistrate judge ruled *sua sponte* that any claims arising before March

2

No. 13-40599

13, 2011, were time barred. Despite the time-bar determination, the magistrate judge also addressed each of Garrett's three claims and found that he had failed to state a claim as to any of them. First, the magistrate judge concluded that Garrett could not state a cognizable Eighth Amendment claim even if the prison schedule deprived him of adequate sleep because the McConnell Unit's 24-hour operational schedule was designed to preserve prison security, not inflict pain. Second, the magistrate judge found that Garrett had not asserted a valid privacy or equal protection claim with respect to the security cameras because prisoners do not have Fourth or Fourteenth Amendment privacy rights. Finally, the magistrate judge held that, even if Garrett's vertigo was a qualifying disability under the ADA, the accessibility provisions of the ADA apply only to constructions and alterations of public buildings occurring after 1992; and, further that Garrett failed to show that the absence of railings in the bathrooms and showers amounted to cruel and unusual punishment, as required for an ADA claim. Garrett timely appealed.[1]

## STANDARD OF REVIEW

The Prison Litigation Reform Act provides that a district court may dismiss a prisoner's civil rights complaint at any time if it fails to state a claim on which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A(b)(1), 42 U.S.C. § 1997e(c)(2). Section 1915A dismissals are designed to "filter out" the large number of frivolous prisoner claims filed in federal court, to "ensure[] that the flood of nonmeritorious claims does not submerge

---

[1] Garrett also requests assistance of counsel, saying only: "Plaintiff is only a man with no legal tenure and he may comprehend law that does not make him a civil lawyer. Thus, the reason why plaintiff back on 13 March 2013 requested counsel to prevent and litigate his claims before the court." We find this two-sentence request is inadequately briefed and accordingly waived. *See Dardar v. Lafourche Realty Co., Inc.*, 985 F.2d 824, 831 (5th Cir. 1993) ("Questions posed for appellate review but inadequately briefed are considered abandoned.").

and effectively preclude consideration of [claims] with merit." *Jones v. Beck,* 549 U.S. 199, 203 (2007). We review dismissals for failure to state a claim based on § 1915(e)(2)(B)(ii) under the same *de novo* standard applicable to dismissals made pursuant to Federal Rule of Civil Procedure 12(b)(6). *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations . . . are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks, citations, and footnote omitted).

## DISCUSSION

### A.    Sleep Deprivation

Garrett challenges the magistrate judge's dismissal of his sleep deprivation claim, arguing that the TDCJ-CID is subjecting him to cruel and unusual punishment by forcing him to choose between eating and sleeping. He contends that the only scheduled period for sleep is from 10:30 p.m. until 2:30 a.m. and that sleep deprivation has negative long-term health effects. He is seeking a change in the prison schedule to allow for seven hours of uninterrupted sleep.

We construe Garrett's complaint as including official capacity complaints against the defendants for injunctive relief.[2]    The Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in

---

[2] Garrett's complaint did not expressly state that he was suing the defendants in their individual capacities or official capacities or both, and the magistrate judge's opinion did not address the issue. However, Garrett's complaint sought injunctive relief and identified each defendant by title; further, he testified at the *Spears* hearing that he does not seek monetary damages, only injunctive relief. His complaint may therefore be liberally construed as including official capacity claims against the defendants for injunctive relief. *Cf. Mayfield v. Tex. Dep't of Criminal Justice*, 529 F.3d 599, 604-05 (5th Cir. 2008) ("Construing Mayfield's pro se complaint liberally, we find that it seeks declaratory relief as well as a permanent injunction against Johnson and Pierce in their official capacities.").

violation of federal law.  *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).  Accordingly, such relief is available if Garrett can establish an Eighth Amendment violation.  *See, e.g., Walker v. Nunn*, 456 F. App'x 419, 422 (5th Cir. 2011) (unpublished).

To establish an Eighth Amendment violation based on the conditions of his confinement, a prisoner must satisfy both an objective and subjective component.  *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).  "First, he must show that his confinement resulted in a deprivation that was 'objectively, sufficiently serious.'"  *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  In other words, the prisoner must demonstrate that the deprivation resulted in the denial of "the minimal civilized measure of life's necessities."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "[S]leep undoubtedly counts as one of life's basic needs." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999).  Thus, conditions designed to prevent sleep may violate the Eighth Amendment.  *Id.*  Second, to satisfy the subjective component, prison officials must have been deliberately indifferent to the alleged conditions and hence possessed a sufficiently culpable state of mind.  *Wilson*, 501 U.S. at 297-303; *Woods*, 51 F.3d at 581.  To establish deliberate indifference, the prisoner must show that officials knew of and disregarded an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837.

At the *Spears* hearing, Garrett explained that, although previously he was housed in a cell at the McConnell Unit, he had been in a prison dorm for about 11 months.  Garrett testified that his daily schedule began at 2:30 a.m. with breakfast call and ended at 10:30 p.m. with lights out, resulting in only four hours scheduled for sleep, and that during those four hours, he would be awakened for prisoner "head counts."  On Mondays through Thursdays, when he worked at the prison garment factory, Garrett's schedule was as follows:

No. 13-40599

(1) he was awakened at 2:30 a.m. for breakfast, which lasted until 3:30 a.m.; (2) between 3:30 a.m. or 4:00 a.m. and 5:00 a.m., a clothing and linens exchange was conducted; (3) between 5:00 a.m. and 6:00 a.m., morning head count was conducted; (4) he worked at the garment factory between 6:00 a.m. and 3:00 p.m.; (5) he attended dinner between 3:00 p.m. and 5:00 p.m.; (6) he was allowed to shower between 5:00 p.m. and 7:00 p.m.; (7) evening count was between 7:00 p.m. and 8:00 p.m.; (8) mail call was between 9:00 p.m. and 10:00 p.m.; (9) at 10:30 p,m., it was time for lights out; and (10) ID checks were conducted every hour until wake-up time at 2:30 a.m.  On the three days he did not work, noise in the dorm prevented him from sleeping.  He was able to get a few extra hours of sleep on Saturdays and Sundays.  During the week, he could choose to miss breakfast and sleep later, but he did not want to miss the meal.  Garrett testified that he suffered from headaches as a result of not sleeping, did not eat as he should, was forgetful, was on an "insomniac schedule," and felt like "a zombie."  Although Garrett did not submit a sick call request regarding his sleep deprivation symptoms, he complained to the prison medical staff.  Earplugs did not help him sleep because of the loud fans, the televisions, and loud talking and hollering by other prisoners.  Garrett wanted the unit to return to a schedule in which inmates had breakfast later to allow seven hours for sleep.

Under our precedent, taking all facts alleged as true and in the light most favorable to Garrett, the sleep deprivation he has alleged could plausibly constitute a denial of "the minimal civilized measure of life's necessities" sufficient to satisfy the objective component of the Eighth Amendment inquiry. *See Harper*, 174 F.3d at 720 (reversing district court's dismissal of a § 1983 suit

alleging that sleep deprivation constitutes cruel and unusual punishment).[3] Our fellow courts have likewise found that inmates plausibly alleged cruel and unusual punishment in violation of the Eighth Amendment when prison conditions prevented adequate sleep. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) (finding that sleep deprivation may deny prisoner of a minimal civilized measure of life's necessities).

As to the second prong, Garrett testified that he repeatedly complained to the prison medical staff about the sleep deprivation resulting from the schedule and was told the schedule was a security issue. Prison officials' failure to change the schedule or otherwise "respond reasonably to risk," despite their knowledge of the harm that could result from the sleep deprivation, could plausibly give rise to a finding of deliberate indifference. *Farmer*, 511 U.S. at 835. Accordingly, we conclude that Garrett's allegations,

---

[3] In dismissing Garrett's claim for failure to state a claim, the magistrate judge relied on our unpublished opinion in *Walker v. Nunn*, 456 F. App'x 419 (5th Cir. 2011). In *Walker*, 456 F. App'x at 421-422, this court affirmed the district court's grant of summary judgment against an inmate alleging sleep deprivation in violation of the Eight Amendment due to "the prison schedule, noise in the prison, and misconduct by prison staff." However, this court particularized from the record that the "structure of the prison schedule, hourly ingresses and egresses, intercom announcements, and daily counts were reasonably related to legitimate penological interests" and that there was an absence of a genuine issue of material fact regarding whether the defendants "took reasonable measures in balancing the daily activities necessary to the functioning of the prison and the time during which prisoners could choose to sleep." *Id.* at 423. *Walker* constitutes persuasive authority yet was decided on summary judgment on a developed record, and it nowhere indicates how many hours were devoted to sleep (presumably more than four) under the prison schedule at issue. *See Walker*, 456 F. App'x at 421. Analysis of deprivation of "the minimal civilized measure of life's necessities" and "deliberate indifference" are fact-intensive inquiries not easily determined without discovery. *See Harper*, 174 F.3d at 720 (reversing district court's dismissal for failure to state a claim as prisoner's claim was not indisputably meritless). The magistrate judge here also incorrectly held that, in order to prevail on his sleep deprivation claim, Garrett needed to establish a physical injury for purposes of 42 U.S.C. § 1997e(e), a showing he had not made. However, "in the Eighth Amendment context[,] . . . the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive relief." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). Garrett testified that he sought injunctive relief and did not seek damages.

viewed in the light most favorable to him, could set forth a plausible Eighth Amendment claim. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Harper*, 174 F.3d at 720. As in *Harper*, 174 F.3d at 720, we emphasize that we do no more than determine that Garrett has alleged a nonfrivolous claim of an Eighth Amendment violation. We do not intimate that Garrett has established a claim on which relief can be granted.

## B.     Surveillance Cameras

Garrett asserts that TDCJ-CID's placement of video recording cameras in the restrooms, showers, and dressing areas of the prison—as well as female officers' viewing of male inmates both in those areas and on the cameras—violates his expectation of minimal privacy under the Fourth Amendment. Garrett also contends that his equal protection rights have been violated by the placement of the cameras in these areas because the women's prisons are not equipped with comparable devices. The magistrate judge dismissed both his privacy and equal protection claims.

We hold that the magistrate judge did not err in dismissing Garrett's privacy arguments for failure to state a claim. We have previously held that prisoners have a minimal right to bodily privacy. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). But, even if a prison regulation "impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine the reasonableness of a prison restriction, we consider the four factors outlined by the Supreme Court in *Turner*: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of justifying that right that remain open to prison inmates," (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally,"

and (4) "whether the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 89-90 (internal quotation marks omitted). Weighing these factors, based on a summary judgment record, we rejected in *Oliver* a similar challenge on the grounds that "constant surveillance, even cross-sex surveillance, of prisoners is constitutional because it is reasonably related to the penological interest of maintaining security." *Oliver*, 276 F.3d at 745-46. The court found that, as here, comprehensive surveillance by all guards increases the overall security of the prison, minimizing inmate-on-inmate violence and sexual assaults. *Id.* at 746. Moreover, requiring only male guards to supervise inmates or doing away with security cameras in the bathroom and dressing areas could require the prison to increase staffing or reassign a large percentage of its staff, or both, and there is no readily identifiable alternative that would impose only *de minimis* expenses in terms of inmate security, staffing costs, or equal employment opportunities. *Id.* We have subsequently affirmed this position. *See, e.g., Mitchell v. Quarterman*, 515 F. App'x 244, 247 (5th Cir. 2012) (unpublished), and several other circuits have likewise upheld cross-sex surveillance, *see, e.g., Johnson v. Phelani,* 69 F.3d 144, 147 (7th Cir. 1995) ("If only men can monitor showers, then female guards are less useful to the prison; if female guards can't perform this task, the prison must have more guards on hand to cover for them."); *Timm v. Gunter*, 917 F.2d 1093, 1101-02 (8th Cir. 1990) (explaining that constant visual surveillance by guards of both sexes is a reasonable and necessary measure to promote inmate security); *Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988) (holding that female correctional officers' presence around naked prisoners did not violate their privacy rights). Garrett makes no privacy-specific argument on appeal beyond his contention that "the placement of recording cameras in the restroom, shower, and dressing quarters in men's prisons only [is] a gender based

discrimination, thus violating equal protection to privacy" and "4th Amendment reasonable expectation of privacy." In light of *Oliver*, Garrett's complaint, and his *Spears* hearing testimony, we affirm the magistrate judge's finding that his conclusional allegation of a privacy claim is indisputably meritless.

Neither did the magistrate judge err in rejecting Garrett's equal protection argument for failure to state a claim. His complaint and his *Spears* hearing testimony prove this claim also to be indisputably meritless and foreclosed by our precedent. We held in *Yates v. Halder*, 217 F.3d 332, 334 (5th Cir. 2000), and reiterated in *Oliver*, 276 F.3d at 746, that, to prove an equal protection violation on the basis of sex, male prisoners must demonstrate that male and female prisoners are similarly situated. Courts should consider "the number of inmates housed in each facility, their average length of stay, their security levels, and the incidence of violence and victimhood" to determine whether the prisons identified—and hence their surveillance policies—are comparable. *Id.* at 335. Garrett failed to identify a particular women's facility or reference anything else to support an allegation that no women's facilities had video surveillance cameras; neither did he allege that male and female prisoners were similarly situated. Vague and conclusional allegations that a prisoner's equal protection rights have been violated are insufficient to raise an equal protection claim. *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990).

Accordingly, we affirm the magistrate judge's dismissal of Garrett's privacy and equal protection claims for failure to state a claim.

## C.　Americans with Disabilities Act (ADA)

Garrett alleges that he suffers from vertigo and gets dizzy spells that cause him to fall suddenly and repeatedly without warning. He was prescribed narcotics for the vertigo, but prefers not to take them and instead rely on

techniques he learned from the John Healy Hospital to help him with dizzy spells; he maintains the medication leaves him feeling drugged, makes it dangerous for him to work, and causes him to be subjected to random drug testing because prison staff thought he was "high." The McConnell Unit was aware of Garrett's vertigo and made accommodations by assigning him to a bottom bunk, allowing him to use medical showers with safety bars or handrails while housed in the cell, and giving him a safer job in the garment factory. Garrett alleges, however, that since his May 2012 transfer from the cell to the dorm, he has not had access to medical showers, and there are no safety bars in the toilet areas or showers available to him. Consequently, Garrett alleges, he has fallen and bumped his head against the wall in the toilet area and almost fallen in the showers because of spinning sensations. After requesting that prison officials install rails in the toilet areas to no avail, Garrett filed this suit, seeking an injunction to require that safety handrails be installed in the restroom and showers and contending that the prison should be fined under the ADA.

The magistrate judge concluded that Garrett failed to state a cognizable ADA claim on three grounds: (1) accessibility provisions of the ADA only apply to the construction of public buildings and alterations that occurred after 1992, 28 C.F.R. § 35.151(a)-(c); (2) to succeed on his accessibility claim, he would have to show that the absence of handrails in the bathrooms and showers amount to "cruel and unusual punishment," and he cannot make that showing, partly because the presence of the bars would not significantly assist him; and (3) he "testified that he is able to use the handicap showers and restrooms upon request," so reasonable accommodations were made.

Title II of the ADA provides that individuals with disabilities may not "'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Frame v. City of*

*Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (quoting 42 U.S.C. § 12132); *see also* 28 C.F.R. § 35.149. Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners. *See Tennessee v. Lane,* 541 U.S. 509, 531 (2004); *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). To state a claim under Title II, a plaintiff must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011).

A public entity's failure "to take reasonable measures to remove architectural and other barriers to accessibility," i.e. satisfy the "reasonable modification requirement," may constitute denial of services and discrimination sufficient to satisfy the second two prongs of the Title II inquiry. *Lane*, 541 U.S. at 531. This "reasonable modification requirement can be satisfied in a number of ways." *Id.* at 532. For facilities built or altered after 1992, the regulations require compliance with specific architectural accessibility standards. *Id.* (citing 28 C.F.R. § 35.151). For older facilities, "a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services." *Id.* (citing 28 C.F.R. § 35.150(b)(1)). "Only if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes." *Id.*

As required under the first prong of the Title II inquiry, Garrett maintains that he has been diagnosed with the qualifying disability of vertigo. Garrett's diagnosis with vertigo is not in question: he has received treatment for over ten years, including narcotics and visualization techniques to ease

dizzy spells, and the prison has made accommodations for his condition. However, as the magistrate judge noted, "the fact that the plaintiff suffers from vertigo does not mean that he is disabled *per se* under the ADA." Though the Appendix to the regulation identifies a few diseases that constitute disabilities *per se* (vertigo is not among them), ADA regulations generally require an individualized determination of disability based on whether the condition "substantially limits an individual in a major life activity." 29 C.F.R. Pt. 16320(j), App. "'Substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. Pt. 16320(j)(1)(i). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. Pt. 16320(j)(1)(vi). Given that Garrett experiences frequent dizzy spells that have caused injuries and limited his work options, we will not disturb the magistrate judge's assumption that he satisfies the first prong of the Title II inquiry.

Garrett fails to satisfy the second and third prongs of the Title II inquiry, however, as he did not plausibly allege that the prison failed to make reasonable accommodations for his vertigo. Contrary to the magistrate judge's holding, even if the facility was built or altered prior to 1992,[4] the facility could still be required to undertake less costly measures, e.g. installation of handrails, to accommodate Garrett's disability, *see* 28 C.F.R. § 35.150(b)(1), even if failure to make these accommodations does not constitute "cruel and unusual punishment." The record establishes that the less costly measures undertaken by the facility constitute reasonable accommodations to enable Garrett's safe use of the bathroom and shower facilities. Garrett could request

---

[4] The McConnell Unit went "functional" in September 1992. Therefore, construction presumably began before January 1992.

No. 13-40599

to transfer from the dorm where he is presently held in order to avail himself of the medical showers, or could begin taking the vertigo medication prescribed to him.    Even if Garrett chose not to take advantage of these reasonable accommodations, he does not show that the installation of handrails in the showers and bathrooms would assist him.

Accordingly, we find that the magistrate judge did not err in dismissing Garrett's ADA claim for failure to state a claim.

### D.    Statute of Limitations

The magistrate judge dismissed Garrett's claims arising before March 13, 2011, as time barred (as well as failing to state a claim), but did not identify specific claims or portions thereof that survived the time-bar dismissal. Garrett challenges the magistrate judge's time-bar ruling.    We affirm the magistrate judge's dismissal of Garrett's privacy, equal protection, and ADA claims for failure to state a claim.    Hence we only address whether the statute of limitations bars Garrett's Eighth Amendment claims.

"Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." *Harris*, 198 F.3d at 156.    There is no statute of limitations specified in § 1983.    The residual federal limitations of four years, 28 U.S.C. § 1658, applies only to statutes enacted or expanded since 1990.    *Jones v. R.R. Donnelly & Sons*, 541 U.S. 369, 382 (2004).    We have previously concluded that § 1983 is not such a statute.    *Walker v. Epps*, 550 F.3d 407, 411 (5th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 261, 272 (1985)).    For claims not governed by the residual clause, we must borrow the general personal injury limitations period of the forum state.[5]    *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).    Texas has a two-

---

[5] The Supreme Court has held that statutes of limitations do not apply to suits seeking solely equitable relief.    *Holmberg v. Armbrecht*, 327 U.S. 392, 296 (1946).    However, in a subsequent decision, the Court clarified that statutes of limitations do apply to § 1983 suits

year limitations period for personal injury actions. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003. The date on which a federal cause of action accrues is a matter of federal law. *Frame*, 657 F.3d at 238. "[A]ccrual occurs the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quoting *Walker*, 550 F.3d at 414).

Garrett testified that he had moved from a cell to a dorm in the McConnell Unit around May 2012, less than a year prior to the filing of his complaint. To the extent that Garrett's claims are construed as challenges to the conditions of his confinement after he moved into the dorm, therefore, the claims are not facially time barred. Garrett testified that that the 24-hour operational schedule, which caused his sleep deprivation, was unique to the dorm at the McConnell Unit, and he had not faced such problems when housed in the cell between 2008 and 2012. Accordingly, we conclude that the magistrate judge erred to the extent that Garrett's Eighth Amendment claims were dismissed as time barred.

## CONCLUSION

For the above reasons, we AFFIRM the district court's dismissal of Garrett's privacy, equal protection, and ADA claims, REVERSE that court's dismissal of his Eighth Amendment claims for failure to state a claim under 28 C.F.R. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and REMAND for further proceedings consistent with this opinion.

---

seeking either injunctive relief or damages. *Wilson v. Garcia*, 471 U.S. at 275; *see also Walker*, 550 F.3d at 412 ("It is plain, however, that the Court, in directing courts in each state to select 'the one most appropriate statute of limitations for *all* § 1983 claims,' made no exception in *Wilson* for § 1983 actions that seek only equitable relief.").