# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2024

Lyle W. Cayce
Clerk

———————

No. 22-40754

———————

Michael Garrett,

*Plaintiff—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:13-CV-70

———————————————————

Before Clement, Engelhardt, and Oldham, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Michael Garrett has been a prisoner in the Texas Department of Criminal Justice system for over thirty years. For the last ten years, his prison units have afforded him at most three and a half hours of total sleep—and at most two and a half hours of continuous sleep—per night. Garrett complained to prison officials on several occasions, explaining that sleep deprivation poses grave health risks. After the officials failed to take corrective action, Garrett sued, invoking the Eighth Amendment's ban on cruel and unusual punishment. In deciding Garrett's Eighth Amendment

claim, the district court applied the wrong legal standard. Accordingly, we VACATE and REMAND for the district court to apply the correct legal standard.

## I.

## A.

Michael Garrett is a prisoner in the Texas Department of Criminal Justice (the "Department" or "TDCJ") system, where he has been incarcerated for over thirty years. Garrett is currently housed in the Estelle Unit, in Huntsville, Texas, where he has been since February 2020. Before that, he resided in the McConnell Unit, in Beeville.

The Department operates its prisons, including the Estelle Unit, on twenty-four-hour schedules. The schedules are chock-full of planned activities—including meals, work assignments, vocational classes, law-library time, recreation, showering, clinic appointments, commissary privileges, and religious services. In fact, the Estelle Unit schedule is so detailed that it contains nearly 100 daily activities. The result is that inmates are afforded three and a half hours of sleep per night. "Rack up" (*i.e.*, bedtime) is at 10:30 p.m., and breakfast begins around 2:00 a.m. But even during this three-and-a-half-hour window, sleep is not continuous. Garrett and other inmates are required to be awake for a 1:00 a.m. bed-book count,[1] meaning that the most continuous sleep that Garrett can theoretically receive is two and a half hours (assuming he falls asleep instantly at 10:30 and sleeps undisturbed until the bed-book count). And nighttime prison conditions—namely the hallway lighting, heavy doors slamming, and prisoners yelling—

---

[1] During the bed-book count, prison officials ensure that each inmate is accounted for by requiring the inmates to verbally identify themselves and provide identification.

further imperil inmates' sleep prospects during this three-and-a-half-hour window.

**B.**

During his term of imprisonment, Garrett has filed multiple grievances to prison officials, including at the Estelle Unit, concerning sleep deprivation, all of which met rejection. Accordingly, Garrett sought relief in a different forum—the courts. In 2013, Garrett sued the Department under the Eighth Amendment, seeking an injunction that would mandate a prison schedule with six hours per night designated for sleep. Garrett consented to have the case tried by a magistrate judge, who dismissed Garrett's complaint under the Prison Litigation Reform Act for failure to state a claim. Relying on *Walker v. Nunn*, 456 F. App'x 419 (5th Cir. 2011), the magistrate judge reasoned, in relevant part, that "[i]n light of the prison's security function, [Garrett] has no constitutional right to a pre-determined number of hours of uninterrupted sleep each night," and that, for Garrett "to prevail on his sleep deprivation claim, [he] would have to establish that he has suffered a physical injury caused by the alleged sleep deprivation."

On appeal, this court reversed the district court's dismissal. We held that "the sleep deprivation [Garrett] has alleged could plausibly constitute a denial of the minimal civilized measure of life's necessities sufficient to satisfy the objective component of the Eighth Amendment inquiry." *Garrett v. Thaler*, 560 F. App'x 375, 379 (5th Cir. 2014) (quotation marks and citation omitted). In so holding, we distinguished *Walker* because that case "nowhere indicate[d] how many hours were devoted to sleep (*presumably more than four*) under the prison schedule at issue." *Id.* at 379 n.3 (emphasis added). We also held that the district court had applied the wrong legal standard: to state an Eighth Amendment conditions-of-confinement claim, a prisoner must show "that his confinement resulted in a deprivation that was

objectively, sufficiently serious" (the objective component) and that prison officials were "deliberately indifferent" to "an excessive risk" posed by those conditions (the subjective component). *Id.* at 378 (internal quotation marks and citations omitted).

Additionally, the district court had "incorrectly held that, in order to prevail on his sleep deprivation claim, Garrett needed to establish a physical injury." *Id.* at 379 n.3. That standard was wrong, we explained, because "in the Eighth Amendment context, the physical injury requirement of § 1997e(e) does not apply to requests for declaratory or injunctive relief." *Id.* (internal quotation marks omitted and alterations adopted). Garrett's allegations of a substantial risk of serious harm were enough to state a claim. *See id.* Similarly, we held, Garrett had adequately stated the subjective component—namely prison officials' awareness of, and deliberate indifference to, Garrett's risk of harm. *Id.* at 380.

On remand, the suit went to a bench trial before a district judge. The two-day bench trial in 2018 centered on the impact of the daily schedule in the McConnell Unit—where Garrett then resided—on Garrett's health. Garrett offered unrefuted testimony that the McConnell Unit schedule permitted only four hours of sleep per night and that sleeping less than four hours per night creates the risk of serious negative health consequences. The Department did not timely offer an expert rebutting Garrett's. Instead, the Department presented testimony on the penological justifications for the McConnell Unit schedule, principally the alleged necessity of periodic bed-book counts during the sleep window and the Unit's inability to schedule

rack-up at an earlier time. The Department also argued that "[t]here is no causation" between Garrett's sleep deprivation and his medical conditions.[2]

The district court denied Garrett relief, holding that Garrett had failed to satisfy his burden as to the objective element of the Eighth Amendment inquiry. Specifically, the court explained, Garrett "could not establish a cause-and-effect relationship between his sleep schedule and any medical complaint" because he "did not offer any expert testimony establishing that a lack of sufficient uninterrupted sleep has, within reasonable medical probability," caused his health conditions.

The court also held that Garrett had failed to satisfy the subjective element—deliberate indifference. In so holding, the district court acknowledged that the Department "was . . . aware of [Garrett's] complaint and the specific danger that Garrett claims the sleep schedule posed." Nonetheless, it held that Garrett could not establish that the officials were deliberately indifferent because the building schedule was based on a legitimate penological interest and "Garrett did not provide any evidence that an alternate 24-hour building schedule could be constructed within the resources of TDCJ to provide more continuous sleep." Garrett appealed.

While Garrett's second appeal was being briefed before this court, the Department transferred Garrett from the McConnell Unit to the Estelle Unit. *Garrett v. Lumpkin*, 840 F. App'x 807, 808 (5th Cir. 2021). We remanded the case to the district court for it to consider whether Garrett was similarly being deprived of sleep at the Estelle Unit and, if so, whether that deprivation violates the Eighth Amendment. *Id.*

---

[2] Garrett suffers from migraines, seizures, vertigo, a skin condition, edema, hypertension, and kidney disease.

On remand, the parties agreed to conduct limited additional discovery as to conditions in the Estelle Unit. After reviewing the new evidence, the district court found that the sleeping schedule and conditions imposed on Garrett in the Estelle Unit were essentially the same as, and even slightly worse than, those in the McConnell Unit. Specifically, the district court found that Garrett "can get only three and one-half hours of sleep, which is further interrupted by hourly cell door operations, bright lights, and a bed-book count at 1:00 a.m." Nevertheless, the district court concluded that such conditions did not amount to an Eighth Amendment violation because Garrett had failed to "sustain[] his burden of proof to show that sleep deprivation is sufficiently linked to his health complaints to establish that the TDCJ building schedule poses a substantial risk of serious harm"—*i.e.*, to show a cause-and-effect relationship. And the district court concluded that Garrett had not satisfied his burden under the subjective element because, in relevant part, "the evidence reflects . . . that the Building Schedule is formulated for legitimate penological purposes." The district court reasoned that Garrett had failed to satisfy the subjective element because "[n]othing in the evidence suggests that TDCJ is engaged in conduct designed to intentionally inflict sleep deprivation on inmates." Garrett appealed.

## II.

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo." *Barto v. Shore Const., L.L.C.*, 801 F.3d 465, 471 (5th Cir. 2015) (quoting *Becker v. Tidewater, Inc.,* 586 F.3d 358, 365 (5th Cir. 2009)). Where the district court's application of the wrong legal standard may have influenced its ultimate conclusion, remand is proper. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521–22 (5th Cir. 2022) (remanding one issue because the district court applied the incorrect legal standard).

### III.

The Eighth Amendment prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and "[t]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004). To amount to cruel and unusual punishment, prison conditions "must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test." *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015) (quoting *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).

In assessing Garrett's Eighth Amendment claim, the district court made two key errors. *First*, the district court held that, because Garrett failed to show that his sleep deprivation—which was undisputed—*actually* caused his health issues, he had not satisfied the objective element of cruel and unusual punishment. But to satisfy the objective component, a prisoner need only show a *substantial risk* of serious harm—not actual harm. *Second*, the district court held that, because the Department had "legitimate penological purposes" for implementing the Estelle Unit schedule, and because the Department did not "engage[] in conduct designed to intentionally inflict sleep deprivation on inmates," Garrett failed to satisfy the subjective element of his Eighth Amendment claim. But the Supreme Court has clarified that a prison's penological purpose has no bearing on whether an inmate has shown "deliberate indifference" for purposes of an Eighth Amendment claim. *Johnson v. California*, 543 U.S. 499, 511 (2005). We explain each error in turn.

### A.

First, the objective element. As the Supreme Court has explained, "[i]t is 'cruel and unusual punishment to hold convicted criminals in unsafe

conditions,'" regardless of whether those conditions actually cause injury. *Helling*, 509 U.S. at 33 (quoting *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982)). After all, "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.* Thus, we have explained, "inmates need not show that death or serious injury has already occurred" to prove that unconstitutional prison conditions exist under the objective element. *Ball*, 792 F.3d at 593. Rather, they "need only show that there is a substantial *risk* of serious harm." *Id.* (quotation marks and citations omitted) (emphasis added).

In *Ball*, the state argued that because "no death-row prisoner has ever suffered a heat-related incident" and the inmate's "medical records show no signs of heat-related illness," the inmate could not show an unreasonable risk of serious heat-related injury. *Id.* This court rejected that argument, explaining that the inmate did not need to show that he had actually suffered from heat-related illness but instead only that he was at substantial risk of serious harm. *Id.*

Here, the district court held that, "to establish that the [Department's] building schedule poses a substantial risk of serious harm," Garrett bears the "burden of proof to show that sleep deprivation is sufficiently linked to his health complaints." But the case law makes clear that Garrett must only show a *substantial risk* of serious harm—not actual harm. Yet, despite acknowledging that Garrett needed only to show a "substantial risk" of serious harm, the district court nonetheless required evidence of actual harm to Garrett's health. That is the wrong standard. And where the district court applies the wrong legal standard, it is proper to remand to the district court with instructions to apply the correct legal standard. *See Forklift Sys.*, 510 U.S. at 23; *Klick v. Cenikor Found.*, 94 F.4th

362, 2024 WL 502910, at *1 (5th Cir. Feb. 9, 2024); *June Med.*, 22 F.4th at 521–22; *Hakim v. Holder*, 628 F.3d 151, 157 (5th Cir. 2010).

**B.**

Next, the subjective element. To satisfy the subjective element of an Eighth Amendment conditions-of-confinement claim, a prisoner must show that prison officials acted with "deliberate indifference" to the risk posed. *Ball*, 792 F.3d at 592. Here, the district court applied the "penological purpose" test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), under which a prison regulation impinging on inmates' constitutional rights is nonetheless valid if reasonably related to legitimate penological interests. But again, this is the wrong test here. As the Supreme Court explained in *Johnson v. California*, the penological-purpose test does not apply in the Eighth Amendment context. 543 U.S. at 511.

In *Turner*, an inmate brought First and Fourteenth Amendment challenges against state prison regulations restricting correspondence between inmates at separate prisons and restricting inmates' ability to marry. 482 U.S. at 81–82. The Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. After *Turner*, we applied this penological-interest test (also called "penological purpose") in at least one Eighth Amendment prison-conditions case. *See Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998). But, in the wake of *Talib*, the Supreme Court clarified in *Johnson* that *Turner*'s penological-purpose test does not apply to Eighth Amendment conditions-of-confinement claims. 543 U.S. at 511.

*Johnson* involved an equal-protection challenge to a prison's policy of race-based segregation of prisoners during their first sixty days of incarceration. *Id.* at 502. The Supreme Court explained that "we have not

used *Turner* to evaluate Eighth Amendment claims of cruel and unusual punishment in prison" and instead "judge violations of that Amendment under the 'deliberate indifference' standard, rather than *Turner*'s 'reasonably related' [to a legitimate penological purpose] standard." *Id.* at 511.[3] It explained that *Turner*'s penological-purpose test applies only to limitations on constitutional rights that are "inconsistent with proper incarceration"—*i.e.*, rights that must *necessarily* be limited in the prison context—and to some due-process claims. *Id.* at 510. The Court all the while emphasized that "the integrity of the criminal justice system depends on full compliance with the Eighth Amendment." *Id.* at 511.

The Department argues that this language from *Johnson* constitutes dicta and should thus be disregarded as non-binding. We disagree that *Johnson*'s statement concerning the applicability of the penological-purpose test is dicta. In this circuit, "if the statement is necessary to the result *or constitutes an explication of the governing rules of law*, it is not dictum." *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns., Inc.*, 761 F.3d 409, 427–28 (5th Cir. 2014) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)) (quotation marks omitted) (emphasis added). In *Johnson*, the Supreme Court explained, in detail, contexts in which the penological-interest test governs and where it does not. That explication included the

---

[3] In this circuit, the only post-*Johnson* opinions applying the penological-purpose test to Eighth Amendment claims are unpublished. *See Walker v. Nunn*, 456 F. App'x 419, 422 (5th Cir. 2011); *Garcia v. Currie*, 674 F. App'x 432, 433 (5th Cir. 2017); *see also Morris v. Livingston*, 739 F.3d 740, 749 n.9 (5th Cir. 2014) (expressing doubt that the penological-purpose test applies in the Eighth Amendment context). Unpublished opinions are, of course, non-precedential. 5TH CIR. R. 47.5.4; *Hernandez-Castillo v. Sessions*, 875 F.3d 199, 206 n.2 (5th Cir. 2017). District courts in this circuit, moreover, continue to regularly apply the penological-purpose test in analyzing Eighth Amendment conditions-of-confinement claims. Those decisions are likewise non-binding. This decision offers clarity to lower courts in fielding conditions-of-confinement claims.

No. 22-40754

Court's pronouncement that the penological-interest test does not apply to Eighth Amendment actions.[4]

*Johnson* therefore instructs that the district court applied the wrong legal standard here. Vacatur and remand is warranted so that the district court may apply the correct legal standard. *See Klick*, 2024 WL 502910, at *1; *June Med.*, 22 F.4th at 521–22; *Hakim*, 628 F.3d at 157.

## IV.

For the foregoing reasons, we VACATE and REMAND for further proceedings consistent with this opinion.

---

[4] Even if the above-described language from *Johnson* were dicta, moreover, this Court is "generally bound by Supreme Court dicta" where that dicta is "recent and detailed." *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016). *Johnson* is a 2005 decision, and it is unclear what constitutes "recent" for *Hollis* purposes. But *Johnson*'s pronouncement is crystal clear and supported by ample authority and explanation: the penological-purpose test does not apply in the Eighth Amendment context. 543 U.S. at 511. In any event, circuit courts treat Supreme Court dicta with greater reverence than dicta emanating from a fellow circuit-court panel. *Compare Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (the Fifth Circuit "give[s] . . . serious consideration to . . . recent and detailed" Supreme Court dicta)*, with United States v. Segura*, 747 F.3d 323, 328–29 (5th Cir. 2014) (this court is "free to disregard" "dictum" "from prior panel opinions").