# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2025

Lyle W. Cayce
Clerk

_____

No. 20-50221

_____

Jonathan S. Burkle,

*Plaintiff—Appellant*,

*versus*

Donte Patrick, *as Estate Representative for Anthony J. Patrick*;
Disciplinary Captain Richard W. Harvey; Sergeant,
*Hughes Unit* Corey L. Altum; Correctional Officer Brian
S. Han; Correctional Officer Deborah A. Snyder; Keith
Wheeler; Thomas Brooks,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:18-CV-141

_____

Before Jones, Haynes, and Douglas, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:[*]

Texas prison inmate Burkle was suspected of ingesting contraband during a contact visit with a family member. Ingesting illegal drugs can cause

_____

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

severe overdoses or even death.  For lack of a single cell, he was placed in a prison shower to avoid harm to himself and secure any illegal baggies that might pass from his body.  He claims it was hot, and he was deprived of food.  (Claiming deprivation of water in a functional shower is absurd on its face.)  Not only was the intent of this temporary placement to protect Burkle's life, but his claim of official "deliberate indifference" for at most 30 hours' confinement borders on frivolity.

As a panel majority, we affirm qualified immunity for four prison officers who had contact with Burkle during his brief sequestration, *i.e.* defendants Snyder, Wheeler, Han and Brooks, but a different majority, through JUDGE DOUGLAS's opinion, reverses the district court's grant of qualified immunity to Major Anthony Patrick.[1]  For the reasons set forth below, I would affirm the district court's summary judgment for all defendants.[2]

The judgment is affirmed in part and reversed and remanded in part.

## I.

On suspicion that Burkle had swallowed several balloons containing illicit drugs, Major Anthony Patrick ordered Burkle's detention in a shower cell without food or drinking water until he relinquished the contraband.

---

[1] JUDGE HAYNES, in other words, concurs to grant qualified immunity to defendants Snyder, Wheeler, Han and Brooks on the basis that they took orders from Major Patrick, and she joins JUDGE DOUGLAS's opinion insofar as it denies qualified immunity to Patrick.

[2] All concur that summary judgment for Captain Harvey and Sergeant Altum must be affirmed because no evidence shows that either of them was aware of the nature or length of Burkle's detention in the shower.

Major Patrick died in 2023, and this court has substituted as a defendant a representative of his estate.

No. 20-50221

Burkle was placed in the shower cell at approximately 11:45 am on July 1, 2017. The outdoor high was ninety-one degrees that day, and Burkle asserts it was uncomfortably hot in the shower cell.

Burkle was initially under the supervision of Correctional Officers Deborah Snyder and Keith Wheeler, but their shifts ended at 5:30 that afternoon. Following Major Patrick's orders, neither Snyder nor Wheeler provided Burkle food or drinking water.

Officers Bryan Han and Thomas Brooks relieved Snyder and Wheeler and worked until 5:30 am the next morning, July 2. They also refused to provide Burkle food or drinking water per Major Patrick's orders. Later that day, Burkle was found lying unconscious in the shower cell near his vomit and feces. He was immediately released from the cell and given cold water. Burkle was in the shower cell for at most thirty hours, was soon after checked out at the infirmary, and suffered no lasting injury. With a functioning showerhead, he had access to warm water while he was in the cell.

Burkle sued the prison officials involved in his confinement under Section 1983 for violating his Eighth Amendment rights. The district court granted summary judgment in favor of all Defendants. The majority reverses as to Major Patrick only. That any defendant should have to stand trial in this case is wrong as a matter of law. The conditions of Burkle's confinement were in no way objectively severe enough to violate the Eighth Amendment. Nor do the facts support a finding that the guards were deliberately indifferent to Burkle's health or safety. And, JUDGE HAYNES concurs with me that the guards are entitled to qualified immunity for following the major's orders, as they were required to do.

## II.

When determining whether an officer is entitled to qualified immunity, "[t]he first question is whether the officer violated a

3

constitutional right. The second question is whether the 'right at issue was "clearly established" at the time of [the] alleged misconduct.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citation omitted). I discuss each element of qualified immunity in turn. The plaintiff has the burden of negating qualified immunity. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). As I will show, there is no genuine material dispute of fact and judgment should be affirmed as a matter of law. FED. R. CIV. P. 56(a).

We must remember the basic principles, which have been in place for more than forty years. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Qualified immunity is based on the "objective legal reasonableness" of the officer's actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S. Ct. 2727, 2739 (1982). Finally, "objective legal reasonableness," in turn, means that "[t]he contours of the right must be sufficiently clear that a reasonable officer would have understood that what he is doing violates that right…[I]n light of the pre-existing law, the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987). Every one of these principles is violated by holding any of these defendants to stand trial. These officers were not "plainly incompetent." They acted to prevent the inmate from inadvertently overdosing and to prevent drug smuggling into the prison. Contrary to the hyperbole permeating the competing opinion, not a bit of pre-existing law made the "unlawfulness" of Burkle's brief detention "apparent."

1.

Burkle's Eighth Amendment claim against the defendants challenges the conditions of his confinement. "Like other Eighth Amendment claims, a conditions-of-confinement claim must satisfy tests for both objective and

subjective components." *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). The objective component requires proof that the deprivation alleged was, viewed "objectively, 'sufficiently serious'"—in other words, "extreme." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citation omitted) (first quote); *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992) (second quote). "The Constitution . . . does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324 (1991) (citation and quotation marks omitted). The subjective component requires proof that the prison official acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977. "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rogers v. Boatright*, 709 F.3d 403, 407–08 (5th Cir. 2013) (citation and quotation marks omitted). Both the objective and subjective components are lacking here.

Burkle contends that he suffered "cruel and unusual punishment" from an overheated shower cell, unsanitary conditions, or a combination of both. Judge Douglas's opinion adds to these complaints the deprivation of up to three meals over at most 30 hours.[3] These lapses will be addressed, but to put the matter in context at the outset, Burkle is not suing for an

---

[3] Exactly how one calculates 30 hours' of unconstitutional conditions is unclear, because Burkle was accused of ingesting contraband about noon on July 1, was then placed in the shower, and was set free the next day after being discovered by two of the defendants. The record is vague, but I credit Burkle's assertions for present purposes.

injunction for himself or to change prison policies—he wants money damages from Major Patrick. The large majority of cases cited by Judge Douglas involve claims for injunctive relief against ongoing prison conditions. Burkle was evaluated medically and mentally within three days of his sequestration in the shower stall and was found not to have been hurt. The only Supreme Court case that concerns damages for unconstitutional conditions (decided three years after Burkle was confined) is *Taylor v. Riojas*, 592 U.S. 7, 141 S. Ct. 52 (2020). In *Taylor*, the plaintiff was placed in a cell covered with feces for four days, leading him not to eat or drink for fear of contamination in his food; then he was placed in a frigid cell with no bed and a clogged drain in lieu of a toilet, which overflowed, leading him to sleep naked in sewage two more days. Such conditions plainly violated the Eighth Amendment. But the Court also denied qualified immunity at summary judgment, holding that "no reasonable correctional officer could have concluded that, under the *extreme circumstances* of this case, it was constitutionally permissible to house Taylor in such deplorably unsanitary conditions for *such an extended period* of time." *Id.* at 8–9, 141 S. Ct. at 53 (emphases added). Although these "particularly egregious facts," *id.* at 9, 141 S. Ct. at 54, required denial of qualified immunity, however, the Court expressly distinguished a case that found "no Eighth Amendment violation where [the] inmate was detained for three days in [a] dirty cell and provided cleaning supplies," *Davis v. Scott*, 157 F.3d 1003, 1004 (5th Cir. 1998). *Id.* at n.2. In other words, the Supreme Court acknowledged the gravity of Taylor's deprivation as a stark contrast from the inmate in *Davis*. Burkle's case involves even less onerous conditions than Davis's. To deny qualified immunity and potentially hold a defendant liable for damages in this case, then, would mark a significant extension of *Taylor*.

Getting back to Burkle's contentions, he argues first that the excessive heat in the shower cell deprived him of the minimal civilized measure of life's

No. 20-50221

necessities.  Burkle was confined to the shower cell for up to thirty hours, he claims, when a high of ninety-one degrees existed outside the prison at some point.  This court's caselaw does not dictate that such brief exposure to a hot cell amounts to cruel and unusual punishment.

JUDGE DOUGLAS's opinion cites only cases that involved *continuous* exposure to high temperatures in the summer months, with the temperatures, or heat index, routinely exceeding ninety-one degrees inside the prison.  *See Yates v. Collier*, 868 F.3d 354, 358 (5th Cir. 2017) ("During the summer months, indoor temperatures within the Pack Unit housing area can reach 100 degrees and consistently exceed 90 degrees."); *Hinojosa v. Livingston*, 807 F.3d 657, 662 (5th Cir. 2015) ("The complaint specifically alleges that the day before Hinojosa died, the temperature at the Unit surpassed 100°F, and in twenty-seven of the twenty-eight days preceding his death, the temperature rose above 95°F."); *Ball v. LeBlanc*, 792 F.3d 584, 590 (5th Cir. 2015) (involving a prison with a "heat index rang[ing] from 81.5° to 107.79° F" during summer months); *Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004) ("The summer temperatures in the Mississippi Delta average in the nineties with high humidity . . . ."); *Blackmon v. Garza*, 484 F. App'x 866, 871 (5th Cir. 2012) (involving repeated exposure to temperatures exceeding 100 degrees).[4]

------

[4] Unpublished opinions like *Blackmon*, of course, are non-precedential, 5th Cir. Loc. Rule 47.5.4, and cannot properly be invoked in qualified immunity tests, where the standard is whether "every reasonable officer" "would have known" that what he was doing was unconstitutional.  Further, the Supreme Court has repeatedly reserved the question whether plaintiffs can rely on circuit court precedents, as opposed to those of the Supreme Court itself, to demonstrate "clearly established law."  *See District of Columbia v. Wesby*, 583 U.S. 48, 66 n.8, 138 S. Ct. 577, 591 (2018); *Reichle v. Howards*, 566 U.S. 658, 665–66, 132 S. Ct. 2088, 2094 (2012).

Burkle's conditions were far less severe. The length of a prisoner's exposure to excessive heat is an important consideration in Eighth Amendment cases, *see Hutto v. Finney*, 437 U.S. 678, 686–87, 98 S. Ct. 2565, 2571 (1978), but Burkle was in the shower cell for just over a day, not the entire summer. Nor does Burkle provide evidence showing how excessive the heat may have been. He simply asks us to take him at his word that the shower cell was "extraordinarily hot." There is no evidence how hot it was in the shower during Burkle's confinement. And common sense suggests that the temperature dropped overnight, inside and outside the prison. Finally, even a warm shower serves to cool the body as the water evaporates.

Burkle next contends that the unsanitary conditions of his shower cell deprived him of the minimal civilized measure of life's necessities. Yet three cases the majority cites are not even remotely comparable. The thoroughly disgusting conditions in *Taylor* have already been described. 592 U.S. at 8, 141 S. Ct. at 53. Burkle's confinement was at most a single day, and he could have minimized feces and vomit in the shower by using shower water, as there is no evidence that the shower drain was clogged. Further, Burkle's confinement was totally unlike the conditions in *Palmer v. Johnson*, where *forty-nine inmates* were "confined in the same small [20X30 feet] area," without toilets and were told that their "only option was to urinate and defecate" on the ground. 193 F.3d 346, 352 (5th Cir. 1999). Finally, *Gates v. Cook* rested on the unsanitary conditions of the entire prison; the issue there was the *general* living conditions for prisoners, whose cells, for instance, were "extremely filthy." 376 F.3d 323, 338–40 (5th Cir. 2004).

JUDGE DOUGLAS's opinion actually goes beyond Burkle's claims and makes up a new one: that depriving Burkle of food and drinking water for thirty hours may violate the Eighth Amendment. Burkle *did not* advance this theory and even concedes that "depriving [him] of food and water when viewed in isolation is likely not an obvious constitutional violation." The

majority's principal support for this (forfeited) claim is *Cooper v. Sheriff, Lubbock County*, 929 F.2d 1078 (5th Cir. 1991). *Cooper* held that a prisoner alleged a cognizable Eighth Amendment conditions of confinement claim where "he was *continuously* deprived of food" by prison officials for an extended period. *Id.* at 1083 (emphasis added). Burkle's deprivation lasted for three meals, and he had continuous access to water through the showerhead.

Finally, Judge Douglas's opinion would hold that the compounding effects of the above conditions deprived him of the minimal civilized measure of life's necessities. But it relies on only two opinions in support of this argument. *Palmer*, as just noted, involved the tight confinement—as intentional punishment--of 49 thinly clad prisoners overnight, without a toilet, in an outdoor pen; there were neither blankets nor a heat source as the winds blew and temperature dropped into the 50s. And *Palmer* rejected a claim based on the denial of a meal. In *Fountain v. Rupert*, 819 F. App'x 215, 218 (5th Cir. 2020), another unpublished, nonprecedential opinion, the alleged deprivations spanned six years. The attempt at analogy to these cases is frankly ludicrous. All the temporary adverse conditions endured by Burkle were not so "extreme" as to amount to an Eighth Amendment violation. *See Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000.

The reliance on truly extreme cases to support a jury trial for Burkle's comparatively mild mistreatment mocks the Supreme Court's insistence that "cruel and unusual" punishment actually means "extreme" conditions. The irrelevance of such extreme cases is further obvious because Major Patrick had a legitimate, non-punitive reason to confine Burkle and deny him food and drink until the question whether he had ingested contraband drugs

No. 20-50221

was resolved.[5] The conditions that Burkle experienced for a short period of time, taken individually or collectively, were not objectively severe.

As to the subjective component of an Eighth Amendment claim, there is no evidence creating a jury question on the prison guards' deliberate indifference—a standard that is more difficult to satisfy than gross negligence. *See Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020). Major Patrick gave the orders. There is no evidence that he or the other defendant guards were aware of a substantial risk to Burkle's health or safety by keeping him in a hot shower stall without three meals for up to thirty hours. I do not see how Judge Douglas's opinion can buy into a claim that Burkle was without water from the showerhead. And as an additional fact, Burkle was cleared by the infirmary *before* he was placed in the shower cell. They were waiting for Burkle to pass or throw up balloons containing illegal drugs. Because ejecting the contraband would be good for Burkle's health, how can it be said that enforcing conditions conducive to that goal would endanger him? Again, this was known by all to be a temporary deprivation and an isolated incident for a specific nonpunitive purpose.

All of the defendants should be exonerated of deliberate indifference to Burkle's constitutional rights.[6] But if that is not enough, as Judge

_____

[5] Judge Douglas characterizes any consideration of penological purpose as misapplication of the "penological-purpose test," which this court has held inapplicable to Eighth Amendment claims. *Garrett v. Lumpkin*, 96 F.4th 896, 902 (5th Cir. 2024). Articulating the purpose of Burkle's sequestration here is not a defense to override the Eighth Amendment, but is one among the totality of circumstances that will ultimately determine whether Major Patrick acted unconstitutionally or was deliberately indifferent to Burkle's predicament. That is especially true where, as here, the confinement's purpose was to ensure the safety the inmate.

[6] I acknowledge that Major Patrick admitted that his instructions to deny food and drinking water were misinterpreted; he was later held to have violated prison regulations. But those facts do not condemn the constitutionality of his conduct or prove he exhibited deliberate indifference. From the standpoint of governing law, his erroneous orders were

No. 20-50221

HAYNES agrees, Officers Snyder, Wheeler, Han and Brooks simply followed the orders of their superior, Major Patrick. This court holds that an officer acting pursuant to the order of a superior officer is entitled to qualified immunity if the superior's order is not "facially outrageous." *Von Derhaar v. Watson*, 109 F.4th 817, 830 (5th Cir. 2024) (quoting *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 398 (5th Cir. 2000)); *see also Cope v. Cogdill*, 3 F.4th 198, 208 (5th Cir. 2021); *Heaney v. Roberts*, 846 F.3d 795, 804 (5th Cir. 2017). Major Patrick's order was not facially outrageous.[7] All four subordinate officers could have viewed it as a justifiable response to Burkle's suspected drug smuggling earlier that morning. None of the regular guards, nor even Major Patrick, could legitimately be found by a jury to have violated Burkle's Eighth Amendment rights.

2.

Because the conditions of Burkle's confinement did not amount to an Eighth Amendment violation, there is no need to reach the second prong of qualified immunity. Nonetheless, it should be obvious that JUDGE

_____

at most negligence, which is not unconstitutional under the Eighth Amendment. *Farmer*, 511 U.S. at 835, 114 S. Ct. at 1977–78.

[7] JUDGE DOUGLAS concludes that neither *Cope* nor *Heaney* support affirming the district court's judgment. She suggests that *Cope* was different because (1) the jailer was following jail policy, (2) the policy was not facially outrageous, and (3) jailers who follow policies aimed at protecting the jailer should not be considered deliberately indifferent. These facts are not all unique to *Cope*, and they fail to counsel a different outcome here. The officers in this case were following orders of a superior. The jail's policy did not address what to do when there is suspected drug smuggling but no dry cell available, so this aspect of the jail's policy does not clearly conflict with Patrick's orders. His orders were not facially outrageous given that a functional water fixture was available for Burkle to clean his cell and to obtain drinking water. The fact that Patrick's orders were aimed at protecting Burkle and confiscating contraband, rather than at protecting the officers, made them no less reasonable or authoritative to the subordinate officers. Nor is deliberate indifference established here just because the officers had some time to think about what they were doing, unlike the officer in *Heaney*.

No. 20-50221

DOUGLAS'S analysis finds no support in clearly established law. Therefore, there is no basis for denying qualified immunity to Major Patrick.

In July 2017, there were no remotely comparable cases holding that Burkle's thirty-hour confinement in a hot shower cell without food would violate the Eighth Amendment. None of the cases cited by JUDGE DOUGLAS'S opinion involve anything like the circumstances here, hence no cases existed to place any defendant on notice that his conduct violated the Constitution. *See Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). Nor is there even an attempt to liken this case to one of those rare, "obvious" cases like *Taylor*, 592 U.S. at 9, 141 S. Ct. at 53–54 (citation omitted).

## III.

The district court granted summary judgment to all Defendants. I would have affirmed in toto. However, the judgment of the district court is AFFIRMED to the extent it grants qualified immunity to officers Snyder, Wheeler, Han and Brooks, Harvey and Altum, and is REVERSED and REMANDED for further proceedings as to Major Patrick.

No. 20-50221

HAYNES, *Circuit Judge*, concurring in part as to each of the other opinions:

I concur in the following decision to affirm the district court as to Harvey and Altum and reverse as to Patrick. I concur in the second sentence of the last paragraph of II.1. of the decision above affirming the district court as to Snyder, Wheeler, Han, and Brooks, because they followed Patrick. Thus, the district court is affirmed on six of the appellees, but we reverse and remand as to Appellee Patrick.

No. 20-50221

Dᴀɴᴀ M. Dᴏᴜɢʟᴀs, *Circuit Judge*, dissenting in part:

Jonathan S. Burkle was locked in a hot prison shower for thirty hours without food and drinking water. Alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment, Burkle sued Defendants pursuant to 42 U.S.C. § 1983. The district court granted summary judgment to Defendants. Based on the conditions of Burkle's confinement, and the genuinely disputed material facts regarding those conditions, I respectfully dissent from the panel majority's decision to affirm the district court's judgment as to Snyder, Wheeler, Han, and Brooks. I would affirm the district court's judgment as to Harvey and Altum and reverse and remand as to all other Defendants.

## Background

Burkle, Texas prisoner # 01526788, was previously housed in the Alfred Hughes Unit of the Texas Department of Criminal Justice ("TDCJ"). On the morning of July 1, 2017, Burkle visited with his cousin.[8] During the visit, prison officials informed Burkle that he was suspected of smuggling drugs. Burkle was given a non-routine, mid-visit strip search, and was allowed to return to visitation. Following the visit, officials strip searched Burkle and allegedly saw contraband in Burkle's mouth that was then swallowed. Burkle contends that this was a false accusation. As a result of the alleged sighting of contraband, Officer Harvey ordered a "pre-hearing detention physical," and Officer Altum escorted Burkle to medical personnel, who determined that Burkle had "[n]o contraindications for

---

[8] Because this case is before us on a grant of summary judgment, we must view the evidence in the light most favorable to Burkle, the non-moving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

placement in segregation and cleared [Burkle] for placement in a dry cell isolation." Instead, Altum escorted Burkle into a shower cell.

According to TDCJ policy, dry cell isolation is "any area designated by the warden" used to observe a prisoner and search his bodily waste to determine if he ingested contraband or concealed it within his body. Dry cell isolation limits a prisoner's access to other prisoners, running water, and standard toilet fixtures thereby eliminating opportunities for a prisoner to destroy contraband, usually for a maximum of forty-eight hours. Any water to the cell must be "turned off and the pipes drained prior to the offender being placed in the dry cell." Furthermore, per the prison's policy, prisoners should be provided meals, sufficient drinking water, and a bedpan upon request; they should be monitored every 15 minutes, and their waste should be searched if needed.

After obtaining approval for dry-cell isolation, Major Patrick ordered that Burkle be locked in a hot and poorly ventilated shower cell. On that day, United States Climate Data near the prison shows the high temperature was ninety-one degrees Fahrenheit. Burkle told the officials that he had documented heat restrictions and risked serious injury if left in the non-airconditioned shower without food or water. Major Patrick "indicated he was making an effort to prevent the introduction of contraband into the facility." But neither the shower was "turned off [nor] the pipes drained prior to" the officials placing Burkle inside. Burkle further objected to being placed in the shower, explaining that he had not ingested any contraband.

"Every staff member involved stated that Major Patrick gave instructions for [Burkle] to receive no food or water." Major Patrick conceded that he ordered officials to ensure that Burkle "would not be receiving anything" but Patrick argued that he meant to say Burkle "would

not be receiving any of his property" in the shower.  Further, Major Patrick stated that he would be back the next day to check on Burkle.

Officer Wheeler followed Major Patrick's orders and refused to provide Burkle with food and drinking water.  Burkle attempted to drink water from the showerhead, but the water came out too forcefully and too hot to provide relief from the heat and resulted in increasing the temperature inside the shower.  The locked shower was hot, humid, unsanitary, had no toilet, and no place to sit or sleep.  Throughout the day, Burkle continually asked officers Wheeler and Snyder for food and drinking water, which they refused to provide. Burkle was denied dinner and the use of the restroom by Wheeler.  Burkle was not provided food or water for thirty hours and missed four meals.

During the thirty-hour period, Burkle experienced shortness of breath, blurred vision, muscle cramps, a headache, stomach cramping, and dry heaving.  Subsequently, Burkle vomited and defecated on the shower floor.  He also passed out.  After regaining consciousness, Burkle asked Officer Han for food, water, medical attention, and cleaning supplies to clean the vomit and feces from the shower floor.  Officer Han denied those requests, and Burkle laid on the shower floor next to his waste.  According to Officer Han, he checked on Burkle every fifteen minutes and found him either "sleeping" or "sitting quietly on the shower cell floor."  Further, Officer Han explained that he was simply "following orders" and "never denied [Burkle] food or water with the knowledge that it would cause him harm."

Burkle requested medical attention from medical staff doing rounds (occurring at least every twenty-four hours according to prison policy), but they told him to submit written requests because his injuries were no longer an emergency.  TDCJ's records lack proof of Burkle's requests for medical

attention during his confinement. Despite requesting both medical attention and grievance forms from other prison officials immediately, no one provided Burkle with these forms until July 5, 2017, three days after the incident.

The next morning, Major Patrick woke Burkle and requested the contraband. Burkle denied that he had contraband and again asked for food, water, and medical attention; Major Patrick refused. Then, Burkle asked Officer Brooks, who again denied Burkle's requests for food, water, and medical attention. Later, Sergeant Winkfield found Burkle lying unconscious next to his vomit and feces. He released Burkle from the shower, gave him a bag to clean his own feces, and provided him with cold water.

TDCJ's records confirm that "[m]ultiple staff members failed to take action to see that" Burkle was placed into a secure cell and Burkle was "denied three consecutive meals and drinking water." Officer Han was informed by his direct supervisor that "Patrick had ordered that we were not to provide [Burkle] with food or water until [Burkle] gave up the drugs he was suspected of smuggling into the prison." Following the incident, Major Patrick said that he had forgotten Burkle was in the shower and knew that he had "made a mistake" and wanted to "take full responsibility" for his "actions or inactions" in placing Burkle in the shower.

TDCJ formally reprimanded Patrick for violating the dry-cell policy and failing "to ensure [Burkle] was provided meals and drinking water." He received a two-day unpaid suspension from work and was placed on disciplinary probation for nine months. For their roles in the incident, Captain Harvey and Sergeant Altum were reprimanded for "substandard duty performance." The remaining supervisors and correctional officers received "Letters of Instruction pertaining to *unlawful* orders . . . and requirements for providing offenders *basic entitlements*." No contraband was ever found.

No. 20-50221

Proceeding *pro se* and in forma pauperis, Burkle filed a § 1983 action against Patrick,[9] Harvey, Altum, Han, Snyder, Wheeler, and Brooks. Defendants filed motions for summary judgment asserting that Burkle's claims were meritless and that they were entitled to qualified immunity. The district court granted Defendants' motions for summary judgment, concluding that Defendants were not deliberately indifferent to Burkle's conditions of confinement, and Defendants were entitled to qualified immunity and sovereign immunity. Burkle filed a timely notice of appeal and has been appointed counsel.

## Analysis

Burkle argues that there are genuine issues of material fact as to whether his conditions of confinement constituted an Eighth Amendment violation and whether the prison officials were deliberately indifferent to his health and safety risks. In addition, Burkle contends that the officials are not entitled to qualified immunity because the conditions of his confinement were obvious constitutional violations, which were clearly established before his confinement in 2017. I discuss each argument in turn.

## Eighth Amendment

"'The unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737–38 (2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (alteration omitted). The Supreme Court has explained that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are

---

[9] On January 4, 2024, Defendants filed a suggestion of death, stating that Appellee Anthony J. Patrick has died. Subsequently, this court granted Burkle's unopposed motion to substitute Patrick with the representative of his estate pursuant to Federal Rule of Appellate Procedure 43(a)(1).

18

'totally without penological justification.'" *Id*. (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)); *see Turner v. Safley*, 482 U.S. 78, 89 (1987). "In making this determination in the context of prison conditions, we must ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). Prison conditions that result in "unquestioned and serious deprivation of basic human needs" or deprive incarcerated individuals of "the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347.[10]

### *Deprivation of Minimum Necessities*

I begin by asking whether Burkle's confinement resulted in a deprivation of the minimal measure of life's necessities. "No static test exists that measures whether conditions of confinement are cruel and unusual, for the Eighth Amendment draws its meaning from the 'evolving standards of decency that mark the progress of a maturing society.'" *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998), *abrogated on other grounds by Garrett v. Lumpkin*, 96 F.4th 896, 901 (5th Cir. 2024), (quoting *Rhodes*, 452 U.S. at 346). Further, in assessing whether conduct is "cruel and unusual punishment," we consider the "totality of the specific circumstances that constituted the conditions of [the plaintiff's] confinement, with particular

---

[10] Contrary to the suggestion of my esteemed colleague, the fact that some of the cases discussed in the foregoing analysis involve prisoners seeking injunctive relief, rather than damages, does not make them less instructive on the issue of whether the officers' conduct here violated Burkle's Eighth Amendment right to be free from cruel and unusual punishment. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978) (explaining that whether a constitutional violation occurred and whether the violation caused compensable injury are separate requirements for a § 1983 damages claim).

regard for the manner in which some of those conditions had a mutually enforcing effect." *Palmer v. Johnson*, 193 F.3d 346, 352–53 (5th Cir. 1999); *see, e.g.*, *Fountain v. Rupert*, 819 F. App'x 215, 219 (5th Cir. 2020) (holding that a district court erred in dismissing plaintiff's Eighth Amendment claims because denial of adequate showers, filthy prison conditions, and extreme shower water temperatures had a mutually enforcing effect to deprive the plaintiff of the minimum necessity of hygiene).

### *Exposure to Excessive Heat*

First, Burkle argues that (1) his confinement to a hot and humid shower cell for thirty hours deprived him of the minimal civilized measure of life's necessities and that (2) the prison officials failed to take remedial measures to protect him from extreme heat by providing fans, ice water, and showers. *See Gates v. Cook*, 376 F.3d 323, 338–40 (5th Cir. 2004).

Defendants argue that Burkle has failed to show scientific evidence or documentary support of the temperature inside the shower cell and, and even if he had, it was not clear that heat measures were necessary based on the temperatures inside the prison. Furthermore, Defendants contend that Burkle lacks physical injury, pointing to a mental health examination performed on July 3, 2017, which showed that Burkle "did not present as being in acute distress." A subsequent examination on July 7, 2017, indicated that Burkle was "normal." Similarly, the district court found that Burkle "did not suffer a lasting physical injury."

"As the Supreme Court has explained, 'it is cruel and unusual punishment to hold convicted criminals in unsafe conditions,' regardless of whether those conditions actually cause injury." *Garrett*, 96 F.4th at 900 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). After all, "it would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had

happened to them." *Id.* (alteration omitted). Thus, "inmates need not show that death or serious injury has already occurred" to prove that unconstitutional prison conditions exist. *Ball v. LeBlanc*, 792 F.3d 584, 593 (5th Cir. 2015). Rather, they "need only show that there is a 'substantial risk of serious harm.'" *Id.* (quoting *Gates*, 376 F.3d at 333).

"It is well-established in our circuit that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures." *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)); *see, e.g.*, *Ball*, 792 F.3d at 592–94 (affirming district court's finding that plaintiffs' exposure to temperatures ranging from the seventies to the hundreds presented a substantial risk of serious harm to plaintiffs); *Blackmon v. Garza*, 484 F. App'x 866, 872–73 (5th Cir. 2012) (reversing district court's judgment where plaintiff's evidence showed, *inter alia*, that the substantial risk to plaintiff's health and safety was obvious where temperatures were regularly in the hundreds and plaintiff was denied cool drinking water); *Blackmon v. Kukua*, 758 F. Supp. 2d 398, 408 (S.D. Tex. 2010) (finding genuine issue of material fact as to whether conditions of confinement precluded summary judgment); *Gates*, 376 F.3d at 338 (affirming trial court's enjoining correctional facility to provide fans, ice water, and showers when heat index was ninety degrees Fahrenheit or higher after finding that heat was openly and obviously a substantial risk to inmate health and safety).

Here, Burkle has shown a substantial risk of serious harm related to heat exposure. He alleged that the shower cell was "small, hot, poorly ventilated, [and] humid . . . with only hot water . . . in a building with no air conditioning." And Burkle not only attested that it was ninety-one degrees outside the prison without accounting for the heat index, but also that during the incident, he started feeling "heat related illness" as his "physical

condition worsened due to heat and dehydration."[11]  Further, the United States Climate Data near the prison corroborates that the outside temperature was ninety-one degrees Fahrenheit.  Indeed, "the probability of heat-related illness" may present "a substantial risk of serious harm to the inmates" which is "open and obvious." *Gates*, 376 F.3d at 340.  Unlike *Ball*, the prison officials here did not implement heat-relief measures to protect Burkle from the substantial risk posed to him by the heat in the prison or shower cell.  *See Ball*, 792 F.3d at 590.  Moreover, as a mitigation measure, it is improper to equate prison shower water with drinking water, as it improperly suggests that any bathroom fixture will suffice.  That would be antithetical to the Eighth Amendment's "'evolving standards of decency that mark the progress of a maturing society.'"  *Talib*, 138 F.3d at 214 (quoting *Rhodes*, 452 U.S. at 346).  Even the prison's records in this case clarified that access to the shower does not constitute "basic entitlements" with respect to drinking water.  Thus, a jury could reasonably conclude that Burkle's exposure to high temperatures, without mitigation measures, constitutes the deprivation of life's necessities, particularly when that deprivation may have caused an obvious risk of serious harm such as dehydration and heat exhaustion.

### *Exposure to Unsanitary Conditions*

Burkle next asserts that the officials denied him the minimal civilized measure of life's necessities by confining him to an unhygienic shower cell.

---

[11] We have held that self-serving attestations can create a fact dispute that precludes summary judgment.  *See, e.g.*, *Luna v. Davis*, 59 F.4th 713, 716 (5th Cir. 2023) (explaining that self-serving affidavits may support the denial of summary judgment where they "proffer[] 'potential explanations, based on . . . personal observations' and other specific facts" (quoting *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded by statute on other grounds, as noted in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002))).

No. 20-50221

Burkle notes that he was not provided cleaning supplies, which would have allowed him to clean his cell and mitigate the intolerable conditions, and that although he had access to water from the showerhead, the water was hot and would have only increased the temperature and humidity in the cell.

Defendants contend that Burkle could have used the shower water to clean the feces and vomit from the cell floor. Further, Defendants argue that Burkle's defecation and vomiting was less severe than that previously held to violate the Eighth Amendment in *Taylor v. Riojas*, 592 U.S. 7 (2020), because Burkle had not shown a clogged drain.

It is well-established that filthy and unsanitary cell conditions may violate a prisoner's Eighth Amendment rights. *See, e.g.*, *id.* at 9 n.2 (holding that "massive amounts" of feces in plaintiff's seclusion cell, his being deprived restroom facilities, forced to relieve himself in his cell, and forced to sleep on the cell floor violated the Eighth Amendment); *Palmer*, 193 F.3d at 352–53 (determining that plaintiff's confinement to a small area without restroom facilities and in unsanitary conditions for seventeen hours deprived him of the basic elements of hygiene); *Gates*, 376 F.3d at 338–40 (holding that plaintiff's confinement to unsanitary cell conditions implicated the Eighth Amendment's protections); *see also Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021) (vacating district court's dismissal of plaintiff's claim against one defendant after finding that mold, urine, and feces covering cell had a mutually enforcing effect to cause the injuries plaintiff alleged); *but see Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (finding no Eighth Amendment violation where plaintiff confined to filthy conditions for three days because "cleaning supplies were made available to [the plaintiff], mitigating any intolerable conditions").

Like the guards in *Taylor*, the prison officials denied Burkle the use of a toilet, which forced him to defecate, urinate, and vomit on the floor of his

locked shower cell and sleep next to his own waste. *See Taylor*, 592 U.S. at 9. Those conditions would allow a jury to find that the shower cell was unconstitutionally unsanitary. *See Harris*, 861 F. App'x at 584. Nothing in the record suggests that the shower cell was sanitary for housing purposes, nor was it adequate for dry cell purposes.[12] Even if water alone could sanitize surfaces of feces and vomit, which it cannot, the potential ability to clean a cell is not dispositive. *See Taylor*, 592 U.S. at 13 (Alito, J., concurring) ("A reasonable officer could not think that . . . [*Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998)] meant that it is constitutional to place a prisoner in the filthiest cells imaginable for up to six days despite the availability of other preferable cells or despite the ability to arrange for cleaning of the cells in question."). Because hygienic conditions of confinement are disputed material facts, a jury should resolve this issue.

### *Deprivation of Food and Water*

Burkle also argues that he was deprived of meals and drinking water while being confined to the shower cell for thirty hours.[13] The Eighth Amendment requires that inmates be provided "well-balanced meals, containing sufficient nutritional value to preserve health." *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (alteration omitted); *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food." (quoting *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988))). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized

---

[12] Recall that TDCJ dry cell isolation procedures mandate access to a bedpan, upon request.

[13] The previous dissenting opinion takes out of context Burkle's statement that "depriving [him] of food and water when viewed in isolation is likely not an obvious constitutional violation." Burkle advances throughout his brief the claim that deprivation of food and water violates the Eighth Amendment.

measure of life's necessities.'" *Talib*, 138 F.3d at 214 n.3 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.; see also Cooper v. Lubbock County*, 929 F.2d 1078, 1083 (5th Cir. 1991) (per curiam).

For example, in *Talib*, the plaintiff "failed to allege facts showing that his diet was nutritionally or calorically deficient," rejected some meals based on his own personal preference and refused to kneel with his hands behind his back before being served meals—which was required for inmates on lockdown. *Talib*, 138 F.3d at 212–13. Because the prison officials had "a legitimate penological interest in having" prisoners on lockdown "assume a non-threatening position," and nothing in the record showed the plaintiff was deprived of meals, the official responsible for serving the meals did not violate the Eighth Amendment when serving the plaintiff his meals. *Id.* at 214. "A facially permissible form of punishment may, for example, through continual use inflict cruel and unusual punishment." *Cooper*, 929 F.2d at 1083 (citing *Dearman v. Woodson*, 429 F.2d 1288, 1289 (10th Cir. 1970) (explaining that prison officials' "refus[al] to provide prisoner food for 50 ½ hours states cause of action under 42 U.S.C. § 1983")).

On the other hand, in *Cooper*, an inmate stated a § 1983 claim for relief when he alleged a prison did not serve him meals when he refused to fully dress, even though the denial of meals was consistent with prison policy. *Cooper*, 929 F.2d at 1082–83 (holding that plaintiff's "assertion that he was continuously deprived of food presents a set of facts that may entitle him to relief"). "Because depriving a prisoner of adequate food is a form of corporal

punishment, the [E]ighth [A]mendment imposes limits on prison officials' power to so deprive a prisoner." *Id.* at 1083.

As in *Cooper*, Burkle has sufficiently alleged that the prison officials continuously deprived him of meals which tends to show that he lacked adequate nutrition within a single period. *Id.* at 1082–83 (holding that plaintiff's "assertion that he was continuously deprived of food presents a set of facts that may entitle him to relief."). In this case, thirty hours without any food is a deprivation of the minimal civilized measure of life's necessities. While Defendants argue that Burkle was placed in a dry cell for a penological purpose, he was actually placed in a shower cell which would seemingly defeat any penological purpose. And though my esteemed colleague contends that deprivation of food and water is "conducive" to ejecting contraband and "good for [Burkle's] health," even under TDCJ's dry cell procedures, whose purpose is to recover contraband, prisoners are to be provided meals and sufficient drinking water. Moreover, even if dry cell procedures required officials to deprive prisoners of food and drinking water, and no one heard Burkle's pleas for food, prisoners remain entitled to adequate nutrition under the Constitution. *Cooper*, 929 F.2d at 1082–83. Thus, a jury could reasonably find that Burkle's continuous captivity was cruel and unusual punishment.

### *Compounding Effects*

Next, Burkle contends that the district court failed to consider whether his conditions of confinement had the "mutually enforcing effect" of depriving him of the minimal civilized measure of life's necessities. *See Palmer*, 193 F.3d at 353–54; *Fountain*, 819 F. App'x at 219.

In *Palmer*, the plaintiff alleged a violation of the Eighth Amendment where prison officials denied him and other inmates toilet facilities to relieve themselves for seventeen hours and kept them outdoors overnight with no

shelter or source of heat while temperatures dropped below fifty-nine degrees. 193 F.3d at 352–53. We held that the "totality of the specific circumstances presented by Palmer's claim . . . constituted a denial of the minimal civilized measure of life's necessities." *Id.* at 353 (citations and quotation marks omitted). Similarly, in *Fountain*, we determined that the plaintiff's allegations that he was subjected to extreme temperatures, shower water temperatures, and filthy prison conditions, when considered together, collectively deprived him of the basic elements of hygiene in violation of the Eighth Amendment because the shower's high temperature effectively discouraged the plaintiff from using the shower. 819 F. App'x at 219.

Here, the shower's high temperature, the humidity, and the conditions of the cell coexist and operated together to deny Burkle freedom from extreme temperatures and the basic elements of hygiene. Like *Palmer*, Burkle was exposed to extreme temperatures, and the prison officials denied Burkle relief. Thus, Burkle's simultaneous exposure to heat and deprivation of a toilet, food, water, and medical attention had a mutually enforcing effect to deprive him of his "basic entitlements." Moreover, a jury could find that such deprivations would compound Burkle's conditions of confinement, as the lack of food and water would obviously contribute to dehydration and heat exhaustion.[14]

Furthermore, even if the prison officials had a "facially permissible form of punishment" for Burkle as they suspected he had ingested contraband, the "continual use" of the shower cell and deprivation of food and drinking water were antithetical to its stated purposes and could lead a

---

[14] *See* Popkin et al., *Water, hydration, and health*, 68 NUTRITION REVS. 439, 439–40, 443–46 (2010) (explaining that humans are hydrated by consuming both food and liquid water, twenty two percent of water is consumed through food, and that dehydration can have both physical and cognitive effects).

fact finder to determine that these circumstances constitute "cruel and unusual punishment." *Cooper*, 929 F.2d at 1083.

Because a jury could find that Burkle's Eighth Amendment rights were violated when Defendants denied him food and drinking water and subjected him to a filthy and hot shower cell, I would reverse the district court's determinations as it pertains to the above.

### *Deliberate Indifference*

Having concluded that Burkle's conditions of confinement resulted in an extreme deprivation of the minimal measure of life's necessities, I next consider whether the prison officials acted with deliberate indifference. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health' . . . and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843 (citation omitted). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rogers v. Boatright*, 709 F.3d 403, 407–08 (5th Cir. 2013).

Burkle states that Defendants were deliberately indifferent because the heat risk was obvious, he told officers that the heat was especially dangerous for him because he had documented heat restrictions, and he repeatedly complained to them that he was suffering from heat-related illness, yet they ignored his pleas for relief. As to the unsanitary conditions, Burkle asserts that the officers were aware that he was in the small shower

with his own waste for the majority of his thirty-hour confinement and refused to supply any means for him to clean the shower.[15] Specifically, Burkle contends that he presented ample evidence that correctional officers Wheeler, Snyder, Brooks, and Han were aware of a risk to his safety and were deliberately indifferent to it because the record indicates that they knew the prison was unairconditioned; had received training on the danger of heat exposure; knew of the high temperature and that Burkle had defecated, vomited, and urinated on the cell floor; knew that Burkle had documented heat restrictions, that the cell was poorly ventilated, that only hot water flowed from the showerhead; and heard him calling out for assistance, food, water, and cleaning supplies. Burkle notes that the district court stated that Snyder, Brooks, and Han claimed that Burkle never asked for help and that his evidence to the contrary creates a genuine issue of material fact precluding summary judgment.

Defendants argue that Burkle fails to satisfy the deliberate indifference standard because the prison officials were not aware of a serious risk of harm to Burkle concerning heat, and the officials could disregard his heat restrictions because he passed the physical exam required for dry cell isolation. Further, Defendants contend that Burkle has not shown that prison officials were aware that he had no drinking water or that he was unable to drink the shower water.

Here, the district court erred when it failed to draw all reasonable inferences in favor of Burkle, as required at the summary judgment stage. *See*

---

[15] Burkle states that he vomited and defecated in the shower cell shortly after dinnertime on July 1, 2017. He asked officers for food, water, medical help, and for means to clean his waste, but was denied until the next day when Winkfield brought him cold water and Brooks gave him a bag for the feces before placing him in a solitary cell and giving him a dinner tray.

*Santos v. White*, 18 F.4th 472, 475 (5th Cir. 2021).  The district court erroneously concluded that "there [was] no evidence that *any* defendant was deliberately indifferent to Plaintiff's health and safety," a conclusion only reachable by disregarding Burkle's allegations in violation of the summary judgment standard.  Below I consider the actions of each Defendant in turn.

### a.  Harvey and Altum

For Harvey and Altum, although they were present when Patrick ordered that Burkle be confined to the shower cell without food and water, there is nothing in the summary judgment record indicating that they knew how long Burkle would be confined to the shower, the conditions he was exposed to, or that he would actually be denied food, water, and a toilet.  In particular, Harvey ordered Burkle's "pre-hearing detention physical," and Altum escorted Burkle to medical personnel, who determined that Burkle had "[n]o contraindications for placement in segregation and cleared [Burkle] for placement in a dry cell isolation."  Then, Altum escorted Burkle into a shower cell.  What followed after that were the actions of the correctional officers, not Harvey and Altum.

Absent knowledge on the part of Harvey and Altum, Burkle fails to show that these Defendants knew that he faced a substantial risk of serious harm and disregarded that risk; thus, the district court correctly determined that Harvey and Altum were not deliberately indifferent to Burkle's health or safety and properly granted summary judgment in their favor.  *See Farmer*, 511 U.S. at 837; *see also Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983) (stating that to be liable under § 1983, a defendant "must be either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed.").  Accordingly,

because Burkle has not demonstrated deliberate indifference for Harvey and Altum, those Defendants are entitled to summary judgment.

*Snyder, Wheeler, Han, Brooks*

The district court erred, however, as to correctional officers Snyder, Wheeler, Han, and Brooks.  First, for Snyder and Wheeler, the district court determined that based on the time that Burkle was placed in the shower cell and the shift they worked on that day, they were aware of, at most, five hours during which Burkle was denied food and water.  The court then stated that even if Burkle made requests to the officers, there was no evidence to contradict that they believed the shower cell was not uncomfortably warm. In doing so, the district court credited Snyder's and Wheeler's statements over Burkle's complaint and sworn affidavit.

Second, as to Han and Brooks, who worked the nightshift, the district court determined that they were responsible only for providing Burkle with breakfast on July 2nd and that although they knew they were not to provide Burkle with food and water, they knew that Burkle had access to water from the shower.  Brooks denied Burkle's requests for food, water, and medical attention. Again, "it does not matter whether the risk comes from a single source or multiple sources[.]" *Farmer*, 511 U.S. at 843.  The focus is whether the correctional officers knew that the deprivation of meals, water, and exposure to excessive heat may cause excessive health risks, and whether the correction officers drew an inference that such potential for harm existed. *See Boatright*, 709 F.3d at 407–08.  Given that heat exposure posed an obvious risk to inmates in *Gates* and *Blackmon*, the extreme heat and poor ventilation in the shower posed an obvious risk to Burkle.  *See Gates*, 376 F.3d at 339–40; *Blackmon*, 484 F. App'x at 872–73.  "[T]his subjective state of mind" may

be inferred "from the fact that the risk of harm is obvious." *Pelzer*, 536 U.S. at 737–38 (citing *Farmer*, 511 U.S. at 842).

The district court's attempt to separate each correctional officer's conduct by a matter of hours does not negate the fact that each officer deprived Burkle of food, water, and medical attention. *Farmer*, 511 U.S. at 843. None of the correctional officers contend that they provided Burkle with adequate food, drinking water, or medical care. Indeed, Burkle continually asked Wheeler and Snyder for food and drinking water, which they refused to provide. As discussed above, the Eighth Amendment requires such minimal civilized measures of life's necessities. Moreover, TDCJ's records confirm that "[m]ultiple staff members failed to take action to see that" Burkle was placed into a secure cell and Burkle was "*denied* three consecutive meals and drinking water." Indeed, according to TDCJ records immediately following the incident, the correctional officers stated that they were told by Patrick not to provide food or water to Burkle and they followed those orders. Defendants do not argue that the Eighth Amendment allows for the deprivation of these basic entitlements. With good reason, as even TDCJ instructed the correctional officers of their "requirements for providing offenders *basic entitlements*."

Moreover, the district court determined that Burkle did not refute the evidence showing that when Han checked on Burkle, he appeared not to be in distress; that he did not make requests for food or water; and that Han would have provided the items requested if he believed Burkle's distress was related to the denial of those items. Again, Burkle provided evidence that these were material facts in dispute, thus summary judgment was improper. Moreover, as to Brooks' and Han's alleged denial of medical attention, "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other

inmates." *Wilson*, 501 U.S. at 303. Deliberate indifference to "serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, [428 U.S. 153, 173 (1976)], proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *accord Farmer*, 511 U.S. at 832.

In *Gates*, we found prison officials deliberately indifferent because they failed to provide adequate heat relief, when the heat index was ninety degrees Fahrenheit or above, and inmates' complaints made obvious the risk posed by heat conditions. Here, the heat risk to Burkle was obvious because it was ninety-one degrees Fahrenheit outside, he told the officers that the heat was especially dangerous for him and that he had documented heat restrictions, and he repeatedly complained to them that he was suffering from heat-related illness. *See* 376 F.3d at 339–40. Moreover, a "lack of knowledge of [the plaintiff's] individual susceptibility to heat-related dangers cannot defeat an Eighth Amendment claim." *Hinojosa*, 807 F.3d at 667. Indeed, in light of our precedent, deliberate indifference may be established when the plaintiff, as here, has alleged "dangerous conditions that we have previously held to be unconstitutional for general inmate populations." *Id.* at 668. Thus, a reasonable factfinder could determine that the correctional officers here refused to provide Burkle any relief from the heat, in the form of drinking water, food, or otherwise. *See Gates*, 376 F.3d at 339–40. This is particularly true here because every staff member involved stated that Patrick gave instructions for Burkle to receive no food or water and the risks of heat exposure and dehydration are obvious.

In addition, exposure to human waste poses an obvious risk to inmate health and safety. *See Taylor*, 592 U.S. at 9. In *Taylor*, the Court held that the risk posed to an inmate housed in cells covered in human waste for six days was obvious, and that prison officials were deliberately indifferent when they knew of the cell conditions and did not provide any way to mitigate

them. *Id.* The Court found that the prison officials were aware of the conditions, and showed deliberate indifference, when one official said the inmate was going to have a "long weekend." *Id.*

Similarly, here, Burkle's prolonged exposure to waste posed an obvious risk as he was confined for thirty hours, most of which he spent in close proximity to vomit, urine, and excrement. At minimum, a reasonable factfinder could find that Han and Brooks were deliberately indifferent as Burkle asked both for food, water, medical attention, and cleaning supplies to clean the vomit and feces from the shower floor. Because Han and Brooks denied those requests, Burkle passed out on the shower floor next to his waste. Importantly, Han knew that Burkle was locked in a shower cell for thirty hours without food and drinking water because he stated that he checked on Burkle every fifteen minutes. Therefore, Han, as with the other correctional officers, were aware of the risks to Burkle's health and safety.

According to TDCJ records, Snyder, Wheeler, Han, and Brooks received "Letters of Instruction pertaining to unlawful orders . . . and requirements for providing offenders basic entitlements." Although "[u]nder our current caselaw, violations of internal procedures or policies are insufficient to give rise to constitutional violations," "when properly supported by precedent, these internal procedures bolster a finding that defendants had "fair and clear warning" of the clearly established right at issue." *Banks v. Herbrich*, 90 F.4th 407, 416 (5th Cir. 2024) (citing *Pelzer*, 536 U.S. at 745–46 ("Even if there might once have been a question regarding the constitutionality of this practice, the Eleventh Circuit precedent . . . as well as the DOJ report condemning the practice, put a reasonable officer on notice . . . .")); *Groh v. Ramirez*, 540 U.S. 551, 564 (2004) ("In fact, the guidelines of petitioner's own department placed him on notice that he might be liable . . . ."). Now, the officials have proffered affidavits that suggest they had no knowledge or were merely following orders. This supports the notion,

at the very least, that material factual disputes remain on summary judgment. Thus, the district court improperly concluded that correctional officers Snyder, Wheeler, Han, and Brooks, lacked awareness that their conduct exposed Burkle to excessive and obvious health risks.[16]

In addition, Defendants repeatedly argue that "there was a legitimate penological purpose" for their "behavior" because they suspected Burkle had contraband. The Defendants' and the district court's reliance on the penological-purpose test, is misplaced.

The Supreme Court has explained that the penological-purpose test does not apply to Eighth Amendment conditions-of-confinement claims. *See Garrett*, 96 F.4th at 900 (citing *Johnson v. California*, 543 U.S. 499, 511

---

[16] Even if it were not disputed that the officers were merely following Patrick's orders, this fact would not demonstrate a lack of deliberate indifference as my esteemed colleague suggests.

In *Cope v. Cogdill*, a prisoner strangled himself and the officer declined to enter until after another jailer arrived pursuant to the jail's policy. 3 F.4th 198, 208 (5th Cir. 2021). We determined that the jailer was entitled to qualified immunity, not only because he was following the jail's policy, but also because the policy was not "facially outrageous" and our caselaw suggests that for inmate-suicide cases, "jailers who follow policies aimed at protecting the jailer should not be considered deliberately indifferent to an inmate's medical need." *Id.* Here, Patrick's orders were aimed at obtaining suspected contraband, not protecting officers supervising a suicidal prisoner. Moreover, given that TDCJ's dry cell procedure requires that prisoners be provided food and drinking water, Patrick's orders to deny Burkle food and drinking water was facially outrageous.

*Heaney v. W. Feliciana Sheriff's Dep't*, 846 F.3d 795 (5th Cir. 2017), also does not support affirming the district court's judgment as to Sydney, Wheeler, Han, and Brooks because they followed Patrick's orders. There, we held that the officer was entitled to qualified immunity when he followed an order to remove the plaintiff from a council meeting because the officer had no time or reason to believe that he was violating the plaintiff's First Amendment rights by following the order. *Id.* at 804. The officers, here, denied Burkle food and drinking water for *hours* during his confinement in an extremely hot and filthy cell in contravention of both TDCJ policy to provide dry cell inmates food and drinking water, and the clearly established caselaw holding that such conduct violates the Eighth Amendment.

(2005)).  In *Johnson*, the Court explained, in detail, contexts in which the penological-interest test governs and where it does not.  543 U.S. at 510–12.  That included the Court's pronouncement that the penological-interest test does not apply to Eighth Amendment actions.  *Id.* at 511.  Indeed, "the integrity of the criminal justice system depends on full compliance with the Eighth Amendment."  *Id.*  Thus, I would remand for the district court to apply to the correct legal standard under *Johnson*. *See Garrett*, 96 F.4th at 901–02.

The issue of whether Burkle made requests for food and water, complained about the conditions of the cell, and informed Snyder, Wheeler, Han, and Brooks of his medical distress constitutes a genuine issue of material fact as to the correctional officer's deliberate indifference that the district court impermissibly resolved against Burkle.  *See* Fed. R. Civ. P. 56(a); *see also United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993) (explaining that assessing the credibility of the witnesses and weighing the evidence is the exclusive province of the jury); *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (stating that a factual issue is "material" if its resolution would affect the outcome of the fact under the applicable law); *Bibbs v. Early*, 541 F.3d 267, 271–72 (5th Cir. 2008) (determining that Bibbs had raised a genuine issue of material fact on his § 1983 retaliation claim where he claimed that he was subjected to below-freezing temperatures for four hours, four nights in a row, in retaliation for exercising his First Amendment rights).  Therefore, I would reverse the district court's decision as to Snyder, Wheeler, Han, and Brooks.

### *Patrick*

Lastly, the district court credited Major Patrick's assertion that he was unaware of Burkle's injuries and that his orders were misunderstood, while other evidence in the record, including Burkle's affidavit and prison records, create a genuine issue as to these material facts.  Specifically, Patrick

contended that his order was misunderstood and that he actually meant that Burkle was not to be given anything from his regular cell. The court noted that there was no dispute that Burkle had no heat restrictions placed on his housing, that Patrick was implementing dry cell isolation to recover contraband, and that he failed to follow the proper dry cell procedures. However, the court determined that, at most, Patrick prevented Burkle from receiving food and water for thirty hours and that there was no evidence that Patrick knew of facts from which an inference could be drawn that a substantial risk of harm existed or that he drew such an inference.

There is no dispute that Patrick ordered that Burkle be confined in the shower stall. Moreover, by ordering that Burkle be confined to the shower cell and denied food, water, and bathroom facilities for an unspecified period of time, and by ignoring Burkle's complaints, a reasonable factfinder could conclude that Patrick was aware of a substantial risk to Burkle's health and safety. *See Taylor*, 592 U.S. at 9; *see also Gates*, 376 F.3d at 339–40; *Ball*, 792 F.3d at 595–96. And, just as the "long weekend" comment indicated deliberate indifference in *Taylor*, so too does Patrick's statement that he would be back to check on Burkle after ordering that he receive no food or drinking water. *See Taylor*, 592 U.S. at 9. TDCJ's records confirmed that Burkle was "denied three consecutive meals and drinking water." TDCJ formally reprimanded Patrick for failing "to ensure [Burkle] was provided meals and drinking water." Because the facts concerning deliberate indifference are disputed and material to Burkle's Eighth Amendment claim, Patrick is also precluded from summary judgment. *See* Fed. R. Civ. P. 56(a).

Based on the totality of circumstances, Burkle was denied his minimum entitlements. Because Defendants' affidavits suggest otherwise,

No. 20-50221

the credibility of such evidence is a question left to a jury.[17]  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, (1986).  Therefore, the district court was wrong to grant summary judgment for Snyder, Wheeler, Han, Brooks, and Patrick.  Drawing all reasonable inferences in favor of Burkle, a jury could reasonably find that Snyder, Wheeler, Han, Brooks, and Patrick were deliberately indifferent.

## Qualified Immunity

Although the above-named officials violated Burkle's Eighth Amendment rights, qualified immunity may nevertheless shield the officers from liability.  An officer is entitled to qualified immunity[18] on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established.  *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Cole v. Carson*, 935 F.3d

---

[17] Our sister circuits have similarly denied qualified immunity where a genuine issue of material fact existed as to whether the prison official knew of a prisoner's conditions of confinement, *see Wilk v. Neven*, 956 F.3d 1143 (9th Cir. 2020); *Gordon v. Schilling*, 937 F.3d 348 (4th Cir. 2019); *Bishop v. Hackel*, 636 F.3d 757 (6th Cir. 2011); *Townsend v. Fuchs*, 522 F.3d 765 (7th Cir. 2008); *Johnson v. Wright*, 412 F.3d 398 (2d Cir. 2005); *Nei v. Dooley*, 372 F.3d 1003 (8th Cir. 2004), and whether the prison official's conduct constituted cruel and unusual punishment, *see Harris v. Miller*, 818 F.3d 49 (2d Cir. 2016); *Stringer v. Rowe*, 616 F.2d 993 (7th Cir. 1980).

[18] Separately, as to sovereign immunity, the district court determined that, to the extent defendants are sued in their official capacity for monetary damages, defendants are immune under the Eleventh Amendment.  The parties do not challenge this issue on appeal.  Nonetheless, we must ensure our subject-matter jurisdiction.  *See Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 231 (5th Cir. 2012).  Pursuant to the Eleventh Amendment, federal courts lack jurisdiction over suits against a state unless that state waived its sovereign immunity, or Congress has clearly abrogated it.  *See Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014).  Here, Burkle has sued the prison officials in their individual capacity, and thus his claims are subject to the qualified immunity defense, not sovereign immunity.

444, 451 (5th Cir. 2019) (en banc); *Tolan*, 572 U.S. at 657.  In defining clearly established law "'the salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'"  *Tolan*, 572 U.S. at 656 (quoting *Pelzer*, 536 U.S. at 741 (further explaining that "officials can still be on notice that their conduct violates established law even in novel factual circumstances"—i.e., even without a prior case that had "fundamentally similar" or "materially similar" facts)).

Burkle contends that the officials are not entitled to qualified immunity because the conditions of his confinement were obvious constitutional violations, which were clearly established before his confinement in 2017.  As noted, Burkle has satisfied the first step in rebutting the qualified immunity defense as a jury could find that Snyder, Wheeler, Han, Brooks, and Patrick violated Burkle's Eighth Amendment right to be free from cruel and unusual punishment.[19]

Accordingly, the focus is on the second step of the qualified immunity analysis—that is, whether the officers violated clearly established law. Burkle contends that Defendants had notice that their acts were unconstitutional because analogous case law is not necessary when the conduct constitutes an obvious constitutional violation; and it was clearly established in 2017 that Burkle's conditions of confinement, individually and in their totality, violated the Eighth Amendment.  Defendants argue that their conduct was not an obvious constitutional violation, and they lacked notice because there was no case on point.

---

[19] As discussed above, Harvey and Altum are entitled to summary judgment as Burkle has not shown they violated his constitutional rights.

As thoroughly discussed above, it was clearly established before 2017 that subjecting inmates to excessive heat conditions, depriving inmates of food and drinking water for a period of time, and subjecting inmates to filthy cells violates the Eighth Amendment. *See Gates*, 376 F.3d at 339–40; *McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir. 1991); *Green*, 801 F.2d at 770; *Pelzer*, 536 U.S. at 738. Therefore, our precedent and the Supreme Court's precedent compels a finding that the obvious risks to health in this case were clearly established for decades before Burkle's confinement.

## Conclusion

Locking Burkle in a hot prison shower for thirty hours, while ignoring his pleas for food, water, and cleaning supplies, as he passed out next to his own vomit, urine and excrement, clearly violated his Eighth Amendment rights. Thus, the genuinely disputed material facts regarding the conditions of Burkle's confinement preclude summary judgment for all Defendants, except Harvey and Altum whom the record does not show were aware of such conditions. I therefore respectfully dissent from the panel majority's decision to affirm the district court's grant of summary judgment in favor of Snyder, Wheeler, Han, and Brooks. I would affirm the district court's judgment only as to Harvey and Altum and reverse and remand as to all remaining Defendants.